THE UNITED STATES BANKRUPTCY COURT

FOR THE

UNITED STATES DISTRICT OF KANSAS – WITICHITA

| | | |
|---|---|---|
| REX VEECH YOUNGQUIST Estate. | : | |
| GAIL YOUNGQUIST Estate. | : | |
| *Plaintiff* | : | Case No. 11-10135 and all |
| | : | other Adversary Proceedings under this |
| | : | filling. |
| **V.** | : | **COMPLAINT** |
| | : | |
| | : | |
| STATE OF TEXAS ET AL., dba | : | |
| Peter Pratt Jr. | : | |
| Brandy L. Sutton | : | COUNTS 1- ??? CAPITAL, |
| Bill Fair | : | FAIR DEBT |
| Defendants | : | COLLECTION PRACTICES ACT & |
| | : | FAIR CREDIT REPORTING ACT |
| | : | COUNTS ????-???? THE TRAVEL ACT |
| | : | COUNTS ????-????: THE HOBBS ACT |
| | : | COUNTS ?????: CIVIL RICO MONEY LAUNDERING ACT |
| | : | COUNTS ????-???? EMERGENCY ACTS |
| | : | COUNTS ????-???: BANKING ACTS & REGULATIONS (NBA, BHA, FDIC, SEC) |
| | : | COUNTS ???-???: TRAFFICKING VICTIMS PROTECTIONS ACT |
| | : | COUNTS ???-???: CONSPIRACY TO COMMIT THE SAME AS ABOVE |
| | : | COUNTS ???-???:: ATTEMPT |
| | : | COUNTS ???-???: DEPREDATION OF |
| | : | GOVERNMENT CONTRACT (Civil Tort) |

*Contents*

CAUSE OF ACTION.................................................................2

JURISDICTION....................................................................3

THE PARTIES.....................................................................3

1

| | | |
|---|---|---|
| 39 | INTRODUCTION | 4 |
| 40 | DURESS | 5 |
| 41 | ABUSE OF PROCESS | 5 |
| 42 | FDCPA 15 USC § 1692D. HARASSMENT OR ABUSE. | 6 |
| 43 | DEFAMATION | 7 |
| 44 | VIOLATIONS OF THE FAIR CREDIT REPORTING ACT | 7 |
| 45 | UNFAIR PRACTICES | 11 |
| 46 | CONVERSION | 13 |
| 47 | EMERGENCY POWERS | 16 |
| 48 | FRAUDULENT TRANSFER | 32 |
| 49 | INVASION OF PRIVACY | 36 |
| 50 | UNJUST ENRICHMENT | 38 |
| 51 | INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS | 41 |
| 52 | ABUSE OF PROCESS/ | 44 |
| 53 | TRAFFICKING VICTIM PROTECTION ACT | 44 |
| 54 | CIVIL RIGHTS | 48 |
| 55 | PRAYER | 49 |
| 56 | COMPUTING DAMAGES | 49 |
| 57 | STATEMENT UPON WHICH RELIEF CAN BE GRANTED | 51 |
58

## CAUSE OF ACTION

### Preface

The Plaintiff, in this matter is forced by lack of resources, competent counsel and many other issues, including health issues, to attempt to fully elaborate all known breaches of legal duty, and "misprision of Felony issues" but is severly hampered by time constraints. With apologies to the court and all innocent parties, this must become an issue of specific clarity, which cannot within the time constraints be properly and fully elaborated. These documents and all others previously submitted must be noticed judicially and any and all specific errors which may become apparent are done with clean hands, with no intent to discieve or mislead, and are almost always begun as or elaborated by use of existing legal arguments, amended in great haste due to necessity. Further note, all defendents acts, are done, and have been done based upon hearsay, (Trinsey vs Pagliaro) by parties other than real parties in interest. It is the absolute intent of the Plaintiff, to discharge all legitimate debts, but is required by duty to elaborate the misprision of felony issues, demonstrated in this case. Therefore historical evidence and lawful citations are often the result of attached memorandums, published by other parties, done without copyright infringement without any intent to profit therefrom.

1. This is an adversary proceeding governed by the Federal Bankruptcy Rules Part VII. The following are the causes of this adversary proceeding:

2.     (1) to recover money or property; (Rule 7001(1)) and damages.

3.     (2) to obtain an injunction or other equitable relief, (Rule 7001(7)).

4.     (3) to obtain a declaratory judgment relating to any of the foregoing, (Rule 7001(9)).

5.     (10) to determine a claim or cause of action removed pursuant to 28 U.S.C. §1452.

6.     **(See Rule 7001. Scope of Rules of Part VII ADVERSARY PROCEEDINGS)**

2

| | | |
|---|---|---|
| 88 | 7. | Plaintiff demands a Judgment For The Plaintiff be entered at this time ordered, that |
| 89 | | the Defendant's claim be REMOVED by the Bankruptcy Court, or remanded into |
| 90 | | District Court for a Trial by **Jury**, in lieu of default judgment, or a trial by jury in the |
| 91 | | Bankruptcy Court, whichever at the discretion of The Honorable Court. |
| 92 | 8. | See TITLE 28 > PART IV > CHAPTER 89 > § 1452 (and under Title 28 Section 3303) |
| 93 | | |

7. Plaintiff demands a Judgment For The Plaintiff be entered at this time ordered, that the Defendant's claim be REMOVED by the Bankruptcy Court, or remanded into District Court for a Trial by **Jury**, in lieu of default judgment, or a trial by jury in the

Bankruptcy Court, whichever at the discretion of The Honorable Court.

8. See TITLE 28 > PART IV > CHAPTER 89 > § 1452 (and under Title 28 Section 3303)

## JURISDICTION

9. Thus establishing the jurisdiction of the Honorable Court.

10. Specifically Sect. 813 of the FDCPA and Sect. 1681 of the FCRA,

11. The Defendants are governed under these laws.

12. There are other laws STATE OF TEXAS ET AL; violated. (Follows FDCPA/FCRA section)

13. Title 28 of the United States Code, presents jurisdiction to the Honorable Court to see out the Sections 3303 and throughout other sections of Part VI, Chapter 176, and Subchapter D.

15. The court has the authority to enter judgment, or remand the case to US District Court for Trial by Jury, in lieu of a Default Judgment (See DNJ LBR §9015-1, §5011-1), or have a trial by jury in The Honorable Court of the United States Bankruptcy District of Kansas – Witicha..

16. **The court also has jurisdiction under Federal Bankruptcy Rule 7004(f).** Personal Jurisdiction because these proceedings are consistent with the Constitution and the laws of the United States.
Further, the following rules are invoked in the execution of this action: Rule 2018. Intervention; Right to Be Heard, Rule 3001. Proof of Claim Rule 3002. Filing Proof of Claim or Interest, Rule 3005. Filing of Claim, Acceptance, or Rejection By Guarantor, Surety, Endorser, or Other Coeditor, Rule 3007. Objections to Claims, Rule 7014. Third-Party Practice, Rule 7015. Amended and Supplemental Pleadings, Rule 7016. Pre-Trial Procedure; Formulating Issues, Rule 7017, Derivative Actions, Rule 7036. Requests for Admission, Rule 7087. Transfer of Adversary Proceeding.

17. Plaintiff believes reversible error would occur in lieu of the entries "Judgment" and "Order" for the Plaintiff into case 11-10135 in which the following rules could invoked and asserted: Appeals: Rule 8001. Manner of Taking Appeal; Voluntary Dismissal; Certification to Court of Appeals, Rule 8002. Time for Filing Notice of Appeal, Rule 8011. Motions (d) Emergency motions, Rule 8012. Oral Argument Rule 8013. Disposition of Appeal; Weight Accorded Bankruptcy Judge's Findings of Fact, Rule 8015. Motion for Rehearing, Rule 8017. Stay of Judgment of District Court or Bankruptcy Appellate Rule 8018, (b) No Controlling Law, Rule 3008. Reconsideration of Claims.

18. This is a <u>Statement of Claim For Money</u> In a Court of Equity. Title 18 is cited to show that the actions brought on by the defendants, have a precedence of being wrong.

19. And thus, each individual action of tort by The Defendants upon the Plaintiffs has been listed with a corresponding United States Code, to show the tort.

20. *"When 2 rights concur in 1 person, it is the same as if they were in 2 separate persons."*

21. *"He, who uses his legal rights, harms no one."*

## THE PARTIES

22. The Defendant STATE OF TEXAS and Peter Pratt, Jr. are debt collectors located in Texas; Sutton and Fair are 3rd party debt collectors in Kansas.

3

| | | |
|---|---|---|
| 140<br>141 | 23. | STATE OF TEXAS ET AL. is governed by the Fair Debt Collection Practices Act 15 USC § 1601, et. Seq. |
| 142<br>143 | 24. | STATE OF TEXAS ET AL. is also a credit lender, governed under the law by the Fair Credit Reporting Act. |
| 144 | 25. | US Code 15 § 1681 governs STATE OF TEXAS ET AL.'s reporting of accounts. |
| 145<br>146<br>147 | 26. | STATE OF TEXAS ET AL. reports to national credit reporting agencies i.e. Trans Union, Equifax, Experian, or purports to be representing a party that does make these reports. |
| 148 | 27. | The State of Kansas abides by and adheres to these laws, Fair Credit Reporting Act. |
| 149<br>150 | 28. | The Plaintiff is a father and daughter REX VEECH YOUNGQUIST Estate, and GAIL YOUNGQUIST Estate, from Lawrence, Kansas. |

151
152
### INTRODUCTION

| | | |
|---|---|---|
| 153<br>154<br>155<br>156<br>157<br>158<br>159 | 29. | The Plaintiff denies ever having any contractual agreement for credit, loans or services relationship with the Defendants. Even if the Plaintiff did have such an agreement, which the Plaintiff denies, the alleged debt is not in question here. But the fact as to how it was or was not validated and wrongful actions of the Defendants in an attempt to collect and credit reporting of the alleged debt, violated the civil rights of the Plaintiff and the law as outlined in the Debt Collection Practices Act, 15 USC § 1601, et seq. and the Fair Credit Reporting Act 15 USC §1681, et seq. |
| 160<br>161 | 31. | The PLAINTIFF has never received a bill, or anything of value from any of these entities. |
| 162<br>163<br>164<br>165 | 32. | DEFENDANT has on numerous times put up notes stating to get out of our homes in three days; other notes would state be out by March 1, 2011, but they did say that the account was being handled by Bill Fair, non-attorney debt collector who states he is under contract with Peter Pratt Jr. receiver for STATE OF TEXAS. |
| 166<br>167<br>168 | 33. | PLAINTIFF called several times during the time period of January 1 through March 2011, but could never get STATE OF TEXAS ET AT; in, nor an explanation of who was in position of the documents of due process. |
| 169<br>170<br>171 | 34. | PLAINTIFF researched that in the TEXAS FRANCHISE TAX PUBLIC INFORMATION REPORT has a "minked in website" listing as being owned by STATE OF TEXAS ET AL., who calls himself a managing partner. |
| 172<br>173 | 35. | He is also listed as another "managing partner" at a business that infers to be a law firm, called (modify?) Peter Pratt Jr., or and Bill Farr and co.. as court appointed receivers. |
| 174<br>175<br>176<br>177<br>178 | 36. | DEFENDANT STATE OF TEXAS ET AL. seems to be impersonating an attorney operation, as the collector, the attorney, and the debt buyer all itself, -abusing an inferred status as an officer of the court-and many other violations pertaining to being its own client, but the largest *direct* violation is that it has stolen PLAINTIFF's identity for unjust enrichment. |
| 179<br>180 | 37. | And Attorney Sutton's office has Bill Fair listed as a non-attorney debt collector who works for Peter Pratt, Jr. and thus STATE OF TEXAS. |
| 181<br>182<br>183 | 38. | And besides attempting to use the police force of DOUGLAS COUNTY to collect on a debt which is **UTTERLY** void, they are also in this Federal venue, seeking to have unjust enrichment here as well. |
| 184<br>185 | 39. | The Plaintiff asked STATE OF TEXAS ET AL. to show that it is the holder in due course. Request was made by Certified Mail # 7010 1870 0003 1728 0700. |
| 186<br>187<br>188<br>189 | 40A. | STATE OF TEXAS ET AL. fails to validate being the holder in due course. STATE OF TEXAS ET AL. only verified that STATE OF TEXAS ET AL. had committed aggravated identity theft, conversion, harassment, extortion, unjust enrichment, abuse of process, massive civil-tort, and gross negligence. (see attached, Memorandums of Law, |

4

| | | |
|---|---|---|
| 190 | | and take judicial Notice of all previously submitted documents to all parties, especially |
| 191 | | the Affidavit of non corporate status, and acknowledgements, agreements and stipulations |
| 192 | | concerning facts of the matters in question and the resulting notices of void judgement, |
| 193 | | lack of due process etc. et al.) |
| 194 | 41A. | In the course of action STATE OF TEXAS ET AL. deprived Plaintiff of rights under acts |
| 195 | | of Congress, herein. |
| 196 | 42A. | **F.T.C. v. Check Investors, Inc., 502 F.3d 159 (3rd Cir. 2007).** "The FDCPA was |
| 197 | | enacted in 1977 as an amendment to the Consumer Credit Protection Act 'to protect |
| 198 | | consumers from a host of unfair, harassing, and deceptive collection practices without |
| 199 | | imposing unnecessary restrictions on ethical debt collectors.'□"  Staub v. Harris, 626 |
| 200 | | F.2d 275, 276-77 (3d Cir.1980) (quoting Consumer Credit Protection Act, S.Rep. No. 95- |
| 201 | | 382, at 1-2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696).  "The primary goal of |
| 202 | | the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection |
| 203 | | practices, including threats of violence, use of obscene language, certain contacts with |
| 204 | | acquaintances of the consumer, late night phone calls, and simulated legal process." |
| 205 | | Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th |
| 206 | | Cir.1997) (citation omitted).  "A basic tenet of the Act is that all consumers, even those |
| 207 | | who have mismanaged their financial affairs resulting in default on their debt, deserve the |
| 208 | | right to be treated in a reasonable and civil manner."  Id. (citation omitted). |
| 209 | 43A. | **Brown v. CARD SERVICE, 3rd Cir. 2006, 464 F.3d 450 p6:**  Analyzing lender-debtor |
| 210 | | communications from this perspective is consistent with "basic consumer-protection |
| 211 | | principles." United States v. Nat'l Fin. Servs., 98 F.3d 131, 136 (4th Cir. 1996). As the |
| 212 | | Second Circuit has observed, "[t]he basic purpose of the least-sophisticated consumer |
| 213 | | standard is to ensure that the FDCPA protects all consumers, the gullible as well as the |
| 214 | | shrewd. This standard is consistent with the norms that courts have traditionally applied |
| 215 | | in consumer-protection law."Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). |
| 216 | | That it may be obvious to specialists or the particularly sophisticated that a given |
| 217 | | statement is false or inaccurate does nothing to diminish that statement's "power to |
| 218 | | deceive others less experienced." Federal Trade Comm'n v. Standard Educ. Soc'y, 302 |
| 219 | | U.S. 112, 116 (1937). See Exhibit HHH. |
| 220 | | |
| 221 | | <div align="center">**DURESS**</div> |
| 222 | | <div align="center">**ABUSE OF PROCESS**</div> |
| 223 | | |
| 224 | 43A. | STATE OF TEXAS ET AL. came out of nowhere with it's Default Judgment obtained |
| 225 | | through improper service resulting in non-appearance of purported "defendants" in order |
| 226 | | to sue Plaintiff, perhaps because PLAINTIFF seemed like an easy target that |
| 227 | | DEFENDANTS could just slip through and put a claim on. |
| 228 | | |
| 229 | 44A. | The abuse of process by STATE OF TEXAS ET AL. was purposely complex- as is its |
| 230 | | relationships with the entities contracted in this inland piracy scheme:  PETER PRATT, |
| 231 | | JR., BRANDY SUTTON, PENDLETON AND SUTTON, BILL FAIR dba BILL FAIR |
| 232 | | & COMPANY, all agents employees and sub- contractors involved, along with the |
| 233 | | overall Defacto scheme of criminal conspiracy, and a host of MISPRISON OF FELONY |
| 234 | | ISSUES to long to list completely herein. Therefore Plaintiffs in this matter reserve the |
| 235 | | right to add and amend, as needed until the full scope of these issues are revealed, under |
| 236 | | our duty to inform the appropriate law enforcement agents. |
| 237 | | |
| 238 | 45A. | The only reason Plaintiff knows the actual names of DEFENDANTS was due to |
| 239 | | placement of Notice of Sale upon Plaintiff's property known as Villa 26 and Four Wheel |
| 240 | | Drive Townhomes. Plaintiff had no knowledge of any "legal" action prior to this event at |
| 241 | | the end of September, 2010. |
| 242 | | |
| 243 | 46A. | The number of violations of regulations perpetrated by STATE OF TEXAS ET AL. |
| 244 | | makes abuse-of-process a complex case. |
| 245 | | |
| 246 | 40. | Costs to build and execute a case of this size, would be far more than what STATE OF |
| 247 | | TEXAS ET AL. has attempted to steal. |
| 248 | | |

<div align="center">5</div>

| | |
|---|---|
| 249<br>250<br>251 | 41. And STATE OF TEXAS ET AL. who pretends has a sophisticated attorney operation, is certainly well aware of this fact. |
| 252<br>253<br>254 | 42. FDCPA does not define "coercion" but Congress defined it in Trafficking Victim Protection Act (TVPA). |
| 255<br>256 | 43. STATE OF TEXAS ET AT; used "coercion" as defined in TVPA § 103(2)(B): |
| 257<br>258<br>259<br>260 | 44. **TVPA §103(2)(B) COERCION.**—The term ''coercion'' means any…plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm or to physical restraint against any person;" |
| 261<br>262<br>263<br>264<br>265<br>266 | 45. **18 USC § 1589(c)(2)** The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm. |

<div align="center">

### FDCPA 15 USC § 1692d. Harassment or abuse.

</div>

| | |
|---|---|
| 269<br>270<br>271<br>272 | 46. A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Mr. Fair's admitted concealment of a fire arm, unlawfully entering the property and threatening a man and his family with bodily harm is a clear violation of this statute. |
| 273<br>274<br>275 | 47. Without limiting the general application of the foregoing, the following conduct is a violation of this section: |
| 276<br>277<br>278 | 48. (1) The use of threat or use of violence or other criminal means to harm the physical person, reputation, or property of any person. |
| 279<br>280<br>281 | 49. (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader. |
| 282<br>283<br>284<br>285 | 50. (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. |
| 286<br>287 | COUNTS ???-???: |
| 288<br>289<br>290 | 51. **Count 1:** STATE OF TEXAS ET AL. Engaged in conduct of which the natural consequence is to abuse. |
| 291<br>292<br>293 | 52. **Count 2:** STATE OF TEXAS ET AL. engaged in conduct in which the natural consequence was to harass. |
| 294<br>295<br>296 | 53. STATE OF TEXAS ET AL.'s said conduct was in connection to the collection of a purported-debt. (§1692d.) |
| 297<br>298 | 54. **Count 3:** STATE OF TEXAS ET AL. used threats of violence to collect a debt. |
| 299<br>300<br>301 | 55. STATE OF TEXAS ET AL. defrauding a court, to abuse the court's police power is a dangerous threat. |
| 302<br>303<br>304 | 56. STATE OF TEXAS ET AL. used misrepresentation of material facts. (due holder in course UCC 3-106(d)) |
| 305<br>306<br>307 | 57. **Count 4:** STATE OF TEXAS ET AL. caused The reputation of the Plaintiff to be harmed. |
| 308<br>309 | 58. **Count 5:** STATE OF TEXAS ET AL. harmed Plaintiff's ability to participate in interstate and foreign commerce. |

<div align="center">

6

</div>

59. STATE OF TEXAS ET AL.'s offer was absolutely obscene.

      Merriam –Webster's defines "obscene"- 1: disgusting to the senses: repulsive 2 a: abhorrent to morality or virtue...c: repulsive by reason of crass disregard of moral or ethical principles <a misuse of power>d: so excessive as to be offensive...

60. **Count 6:** The natural consequence of STATE OF TEXAS ET AL.'s obscene behavior was to abuse, or harass.

61. **Count 7:** STATE OF TEXAS ET AL. associated with those who caused a telephone to ring with intent to annoy, abuse, or harass any person at the called number. 15 USC § 1962d.(a)(5).

62. And still STATE OF TEXAS ET AL. has never validated his claim.

63. Even if he had bothered to verify a claim, which he did not, there are circumstances when, behavior voids a claim.

## DEFAMATION

64. The following relates to all documents to which the Plaintiff has knowledge of in this instant matter. Notice is hereby made of legal objection to all, based upon the incomplete knowledge of non-parties of interest, in specific violation of the rules of civil procedure, rule 17 requiring a real party of interest......ratification of commencement.

65. **Count 8:** STATE OF TEXAS ET AL. reported erroneous and inaccurate information.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

66. According to Fair Credit Reporting Act, section 623. Responsibilities of furnishers of information to consumer reporting agencies [15U.S.C. section 1681s-2]: (a) Duty of furnishers of information to provide accurate information . See Exhibit M.

      FAIR CREDIT REPORTING ACT 15 USC § 1681s–2:

67. Responsibilities of furnishers of information to consumer reporting agencies

68. STATE OF TEXAS ET AT; reported this account to all three bureaus.

69. STATE OF TEXAS ET AL. used erroneous and inaccurate information.

70. STATE OF TEXAS ET AL. has not provided validation of the alleged debt/account.

71. STATE OF TEXAS ET AL. has a failure to mark the account in dispute.

72. Experian, Trans Union, and Equifax credit reports of Plaintiff does not reflect dispute.

73. Though the Plaintiff has sent a letter of validation/dispute to STATE OF TEXAS ET AT;

74. To date the Defendant has not responded.

78. **Count 9:** STATE OF TEXAS ET AL. was notified that his information was inaccurate...furnished it anyway.

79. 15 USC §1681s-2 (B) Reporting information after notice and confirmation of errors. A person shall not furnish information relating to a consumer to any consumer reporting agency if— (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate.

80. **Count 10:** STATE OF TEXAS ET AL. failed to notify the consumer reporting agency of incorrect data.

81. 15 USC §1681s-2 (D)(2) Duty to correct and update information A person who— (A) regularly...furnishes information to...consumer reporting agencies...and (B) has

7

| 361 | | furnished to a consumer reporting agency information that the person determines is not |
| 362 | | complete or accurate, shall promptly notify the consumer reporting agency of that |
| 363 | | determination and provide to the agency any corrections to that information, or any |
| 364 | | additional information, that is necessary to make the information provided by the person |
| 365 | | to the agency complete and accurate, and shall not thereafter furnish to the agency any of |
| 366 | | the information that remains not complete or accurate. |
| 367 | | |
| 368 | 82. | **Count 11:** STATE OF TEXAS ET AL. did not notice dispute of debt to credit reporting |
| 369 | | agency. |
| 370 | | |
| 371 | 83. | 15 USC §1681s-2 (3) Duty to provide notice of dispute |
| 372 | | |
| 373 | | If the completeness or accuracy of any information furnished by any person to any |
| 374 | | consumer reporting agency is disputed to such person by a consumer, the person may not |
| 375 | | furnish the information to any consumer reporting agency without notice that such |
| 376 | | information is disputed by the consumer. |
| 377 | | |
| 378 | 84. | STATE OF TEXAS ET AL. who was aware of the situation failed to mitigate the issues. |
| 379 | | |
| 380 | 85. | STATE OF TEXAS ET AL. knowingly and with willful non-compliance, pursued |
| 381 | | continued collection activity. |
| 382 | | |
| 383 | 86. | STATE OF TEXAS ET AL. with negligent-noncompliance, pursued continued collection |
| 384 | | activity. |
| 385 | | |
| 386 | 87. | STATE OF TEXAS ET AL. failed to correct the Plaintiff's credit reports. |
| 387 | | |
| 388 | 88. | STATE OF TEXAS ET AT; was informed of the erroneous situation and of the violation |
| 389 | | of the FCRA and FDCPA. |
| 390 | | |
| 391 | 90. | **Count 12:** STATE OF TEXAS ET AL. violated 15 USC § 1681n. Civil Liability for |
| 392 | | willful noncompliance. |
| 393 | | |
| 394 | 91. | With negligent-noncompliance, STATE OF TEXAS ET AL. pursued continued- |
| 395 | | collection activity. |
| 396 | | |
| 397 | 92. | Defendant failed to correct the Plaintiff's credit reports and the erroneous situation. |
| 398 | | |
| 399 | 93. | STATE OF TEXAS ET AT;, previously was duly Informed of the situation. |
| 400 | | |
| 401 | 94. | STATE OF TEXAS ET AL. was informed of the violation of the FCRA and FDCPA & |
| 402 | | other acts. |
| 403 | | |
| 404 | 95. | **Please see Exhibit B for exact wording and terms of 15 USC § 1681n. |
| 405 | | |
| 406 | 96. | **Count 13:** Violation of Provisions under FCRA §1681o. Civil liability for negligent |
| 407 | | Non Compliance |
| 408 | | |
| 409 | 97. | Plaintiff restates all allegations and demands judgment for the Plaintiff. |
| 410 | | |
| 411 | 98. | Please see rules on Civil liability for negligent Noncompliance |
| 412 | | |
| 413 | 100. | STATE OF TEXAS ET AL. has damaged the Plaintiffs Credit Report, and Credit Score. |
| 414 | | |
| 415 | 101. | STATE OF TEXAS ET AL. has committed Defamation of Character, per se, against the |
| 416 | | Plaintiff. |
| 417 | | |
| 418 | | |
| 419 | | |
| 420 | 102. | Alan Greenspan November 10, 2010 speaking in Jekyll Island, South Carolina: "There |
| 421 | | are two fundamental reforms that we need to get- adequate capital and two, to get far |

<div align="center">

**GROSS NEGLIGENCE/ FRAUD & FRAUDULENT
MISREPRESENTATIONS**

</div>

<div align="center">

8

</div>

| | | |
|---|---|---|
| 422 | | higher levels of enforcement of fraud statutes- existing ones, I'm not even talking about |
| 423 | | new ones. Things are being done which were-are certainly illegal clearly criminal in |
| 424 | | certain cases which fraud, fraud, fraud is a fact, fraud creates very considerable instability |
| 425 | | in competitive markets." |
| 426 | 103. | **Count 14:** Knowingly and willfully obtaining information on Plaintiff from a consumer- |
| 427 | | reporting-agency under false pretenses § 1681q. Obtaining information under false |
| 428 | | pretenses |
| 429 | | |
| 430 | 104. | § 1681q. Any person who knowingly and willfully obtains information on a consumer |
| 431 | | from a consumer reporting agency under false pretenses shall be fined under title 18, |
| 432 | | imprisoned for not more than 2 years, or both. |
| 433 | | |
| 434 | 105. | STATE OF TEXAS ET AL. violated TITLE 15 FDCPA § 1692e. False or misleading |
| 435 | | representations. |
| 436 | 106. | A Debt collector may not use any false, deceptive, or misleading representation. |
| 437 | 107. | **Count 15:** False representation in connection with the collection of a debt. (§1692e). |
| 438 | | |
| 439 | 108. | **Count 16:** Deceptive representation in connection with the collection of a debt. (§1692e.) |
| 440 | | |
| 441 | 109. | **Count 17:** Misleading representation in connection with the collection of a debt.§1692e.) |
| 442 | | |
| 443 | 110. | **Count 18:** STATE OF TEXAS ET AL. made a false representation of the character of a |
| 444 | | debt. (§ 1692e. (2)(A)) |
| 445 | | |
| 446 | 111. | **Count 19:** STATE OF TEXAS ET AL. made a false representation of the amount of a |
| 447 | | debt. (§ 1692e. (2)(A)) |
| 448 | | |
| 449 | 112. | **Count 20:** ...false representation of the legal status of any debt. (§ 1692e. (2)(A)) |
| 450 | | |
| 451 | 113. | **Count 21:** ...the implication that nonpayment will result in the arrest.  (§ 1692e.(4)) |
| 452 | | |
| 453 | 114. | STATE OF TEXAS ET AT; never validated his claim. (intentionally restated) |
| 454 | | |
| 455 | 115. | Plaintiff further states it is far too easy for anyone in the world to arbitrarily make a |
| 456 | | claim. |
| 457 | | |
| 458 | 116. | Data on a claim could be put together to show evidence of a debt, that may not be true |
| 459 | | data. |
| 460 | | |
| 461 | 117. | When there is no meeting of the minds, however, there is no consensus ad idem. |
| 462 | | |
| 463 | 118. | There was no contract for money loaned, or purported services rendered. |
| 464 | | |
| 465 | 119. | STATE OF TEXAS ET AL. gave no value, no indemnity and no subrogation. |
| 466 | | |
| 467 | 120. | STATE OF TEXAS ET AL. should have proved he was the holder in due course of a |
| 468 | | debt. (UCC 3-106(d) |
| 469 | 121. | But, he can't because he's not; he has no claim, (15 USC § 1692e.(4)) |
| 470 | 122. | **Count 22:**  communicated credit info, which should be known to be false. (1692e.(8)) |
| 471 | 123. | **Count 23:** STATE OF TEXAS ET AL. failed to communicate disputed debt to agencies. |
| 472 | | (15 USC 1692e. (8)) |
| 473 | 124. | **Count 24:** Used false representation or deceptive means to collect a debt. (1692e. (10)) |
| 474 | | |
| 475 | 125. | **Count 25:** Used false representation or deceptive means to obtain information (1692e. |
| 476 | | 10) |
| 477 | | |

9

478  126.  **Count 26:** Implied account had been turned over to innocent purchasers for value. (12)
479

480  127.  **Count 27:** STATE OF TEXAS ET AL. used of a business, company, or organization
481        name other than the name of the debt collector who's the holder in due course. (15 USC §
482        1692e. (14))
483

484  128.  **Count 28:** STATE OF TEXAS ET AL. used unfair means to collect a debt. 15 § USC
485        §1692f.
486        .

487  129.  **Count 29:** STATE OF TEXAS ET AL. used unconscionable means to collect a debt. 15
488        USC § 1692f.
489

490  130.  STATE OF TEXAS ET AL. in the person of BILL FAIR used language & symbol on
491        address, not of company who owned the debt.
492

493  131.  15 USC § 1692f. (8) The company's owner, Bill Fair, confirmed this on the phone and
494        notes on door.
495

496  132.  **Count 30:** STATE OF TEXAS ET AT; conspired with parties to call and leave notes on
497        our doors of times 15 USC § 1692f. (5)
498

499  133.  STATE OF TEXAS ET AL.'s harassment created a Credit Default Swap in which
500        STATE OF TEXAS ET AL. benefited.
501

502  134.      *He who takes away the means destroys the end. Co. Litt. 161.*
503

504  135.  If there were any debt, STATE OF TEXAS ET AL. did not lawfully substantiate it.
505

506  136.  And any contract, when a threat is made, is voidable (Rest.2nd §175), so that if a contract
507        had existed, it would be void.

508        **§175. WHEN DURESS BY THREAT MAKES A CONTRACT**
509        **VOIDABLE: (1) If a** party's manifestation of assent is induced by an improper threat
510        by the other party that leaves the victim no reasonable alternative, the contract is voidable
511        by the victim.
512

513  137.  §176. WHEN A THREAT IS IMPROPER: (1) A threat is improper if (a) what is
514        threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in
515        obtaining property, (c) <u>what is threatened is the use of civil process and the threat is made</u>
516        <u>in bad faith</u>... (2) <u>A threat is improper if the resulting exchange is not on fair terms,</u> and
517        (a) the threatened act would harm the recipient and would not significantly benefit the
518        party making the threat, or (c) what is threatened is otherwise a use of power for
519        illegitimate ends.  (from Restatement (Second) of Contracts)
520

521  138.  STATE OF TEXAS ET AT; threatened an action which was a tort. (Rest of Contr. §
522        176(1)(a))
523

524  139.  STATE OF TEXAS ET AT;'s tort became a crime when he obtained property. (§
525        176(1)(a))
526

527  140.  STATE OF TEXAS ET AL.'s civil process was made in bad faith. (§176(1)(c))
528

529  141.  STATE OF TEXAS ET AL.'s threat was not on fair terms. (§176(2))
530

531  142.  STATE OF TEXAS ET AL.'s threatened act would harm recipient and would not
532        significantly benefit the party making the threat. (whomever STATE OF TEXAS ET AL.
533        purports to represent). (§176(2)(b))
534

535  143.  What STATE OF TEXAS ET AL. is threatened is a use of power for illegitimate ends.
536        (§176(2)(c))
537

538  144.  STATE OF TEXAS ET AL.'s threat was abusive. (§176 comments)

145. STATE OF TEXAS ET AL.'s threat resulted in wrongful seizure of goods. (§176 comments)

146. STATE OF TEXAS ET AL.'s threat caused economic harm. (§176)

147. STATE OF TEXAS ET AL. intended his threat to cause economic harm. (§176)(see motive Credit Default Swap following this section.)

148. **F.T.C. v. Check Investors, Inc., 502 F.3d 159 (3rd Cir. 2007):** The prohibition on unfair or unconscionable practices precludes a debt collector from adding any charge to the underlying debt unless that charge is authorized by law or the agreement creating the debt. 15 U.S.C. § 1692f(1).

149. But STATE OF TEXAS ET AT; has created a new debt, a new security-obligation, an asset in foreign commerce.

150. **Jerman v. Carlisle 559 U. S. ____ (The Supreme Court 2010):** II. The Rule That Ignorance of the Law Is No Defense Applies With Special Force to the FDCPA.

151. Value and consideration on an instrument like that, is the law.

### **TITLE 15 > CHAPTER 41 > SUBCHAPTER V > § 1692f.**
### **Unfair Practices**

152. A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

    (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law…

    (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

    (5) …collect telephone calls (NOTE: cell phone)

    (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

153. VALIDATION OF DEBTS: STATE OF TEXAS ET AL. violated 1692g(a).

154. Congress elected STATE OF TEXAS ET AL. *5 days* to importantly be compelled to provide validation.

155. **Count 31:** Not sending notice of the <u>amount of the debt</u> owed within 5 days

156. **Count 32:** Not sending the name of the <u>Creditor to whom the debt is owed</u> within 5 days.

157. § 1692g (a)(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

158. § 1692g (a)(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

11

| | | |
|---|---|---|
| 592 593 594 | 159. | § 1692g (a)(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. |
| 595 | 160. | 1692g.(e) Notice provisions |
| 596 597 598 599 600 601 | 161. | The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section. |
| 602 603 | 162. | At this point Plaintiff went to Gramm-Leach-Bliley and found there were more violations. |

### *From one thing you can discern all.*

| | | |
|---|---|---|
| 605 606 607 | 163. | STATE OF TEXAS ET AL.'s main motive for economic harm, was to reap the benefit of credit-default-swap. |
| 608 | 164. | Plaintiff stands on the protections of 1692g. |
| 609 610 611 | | 15 USC 1692g.(c) : The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer. |
| 612 613 | 165. | **Count 33:** Violation of 15 USC § 1692i (b) bringing legal action, unauthorized by FDCPA. |
| 614 | 166. | Fair Debt Practice does not authorize bringing legal actions by debt collectors. |
| 615 616 | 167. | TITLE 15  CHAPTER 41  SUBCHAPTER V  § 1692i (b) Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors. |
| 617 618 619 620 621 | 168. | **Jerman v. Carlisle 559 U. S. ____ (The Supreme Court 2010):** Justice Story, refusing to allow a mistake-of-law defense under a federal statute in 1833, explained that "[t]he whole course of the jurisprudence, criminal as well as civil, of the common law, points to a different conclusion. |
| 622 623 624 625 626 627 | 169. | **Jerman v. Carlisle 559 U. S. ____ (The Supreme Court 2010):** The danger identified by Justices Story and Holmes is especially great under the FDCPA, which was enacted in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" that "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of personal privacy." 15 U.S.C. § 1692(a). |
| 628 629 | 170. | Every contract or conspiracy, in restraint of trade or commerce is declared to be illegal. |
| 630 631 | 171. | STATE OF TEXAS ET AL.'s additional bad conduct includes obstructing commerce. |
| 632 633 634 635 636 637 | 172. | **Jerman v. Carlisle 559 U. S. ____ (The Supreme Court 2010):** Encouraging Bad Conduct. Perhaps the most important justification for the rule is the threat that merely allowing a mistake-of-law defense to be raised will encourage bad conduct. Justice Story sounded this theme when he warned against the "extreme danger of allowing such excuses to be set up for illegal acts, to the detriment of the public. |
| 638 639 640 | 173. | [§ 1 Sherman Act, 15 U.S.C. § 1] Every contract…or conspiracy, in restraint of trade or commerce…is declared to be illegal…a felony, and, on conviction…shall be punished… |
| 641 | 174. | **Count 34:** Making a contract in restraint of trade and commerce. |
| 642 643 | 175. | Interstate and foreign travel §1952(a)(1) for specificity on the following counts. |
| 644 645 | 176. | Consumer-oriented-transaction-banking is interstate even when considered intrastate. |

12

| | | |
|---|---|---|
| 646<br>647<br>648 | 177. | Certain securities are considered "foreign" even if by United States persons, (See 78 et seq.) |
| 649<br>650<br>651 | 178. | Securities sent by the "consumer" checkbook banking are considered to move in "Interstate Commerce." |
| 652<br>653 | 179. | Those <u>same</u> securities when marketed to CDS, FRB, et al. move in "foreign commerce." |
| 654<br>655<br>656 | 180. | Cede & Company is a UK Company. (STATE OF TEXAS ET AL.'s direct or indirect settlement agent) |
| 657<br>658<br>659 | 181. | Cede & Company own DTCC, NSCC and DTC, the companies that provide underwriting and clearing settlement. |
| 660<br>661<br>662 | 182. | STATE OF TEXAS ET AL. directly or indirectly uses Cede and Company for clearing and settlement. |
| 663<br>664 | 183. | He used mail or wire, with intent to distribute proceeds of unlawful activity. |
| 665 | 184. | The proceeds are funds of the Plaintiff, extorted by STATE OF TEXAS ET AT;. |
| 666 | 185. | <u>**Count 35:**</u> Using the mail in interstate commerce, in any unlawful activity. §1952(a)(1). |
| 667<br>668<br>669 | 186. | STATE OF TEXAS ET AL. used the mail in foreign commerce, with intent to distribute the proceeds. |
| 670<br>671 | 187. | The unlawful activity was in foreign commerce involving GLB 206B securities. |
| 672<br>673 | 188. | The <u>proceeds</u> are the securities in this case; |
| 674<br>675 | 189. | The proceeds of the proceeds are also securities, and or cash. |
| 676 | 190. | <u>**Count 36:**</u> Using the mail to promote an unlawful act, and thereafter performing that act. |

## CONVERSION

| | | |
|---|---|---|
| 677<br>678 | 191. | STATE OF TEXAS ET AT; robbed the Plaintiff of 1200 hours of time preparing this case, in research and assistance from third parties. |
| 679<br>680<br>681 | | |
| 682<br>683 | 192. | See United States Attorney Manual 9-131.010 Introduction. Hobbs Act. Exhibit W. |
| 684<br>685<br>686 | 193. | <u>**Count 37:**</u> Attempting Robbing the Plaintiff of $900,000.00 the value of the instrument, which The Defendant stole from The Plaintiff. |
| 687<br>688 | 195. | The Hobbs Act (18 U.S.C. § 1951) prohibits robbery affecting foreign commerce. |
| 689<br>690 | 196. | <u>**Count 38:**</u> Robbing the Plaintiff of $900,000.00 by monetizing a fraudulent security. |
| 691<br>692<br>693 | 197. | STATE OF TEXAS ET AL. negatively affected the plaintiff's ability in foreign commerce. |
| 694<br>695 | 198. | Non-corporate entity United States person as foreign classification. |
| 696<br>697 | 199. | The Hobbs Act prohibits attempted robbery affecting interstate commerce. |
| 698<br>699 | 200. | <u>**Count 39:**</u> Using Abuse of Process to Attempt to rob the Plaintiff of $900,000.00. |
| 700<br>701 | 201. | The Hobbs Act prohibits extortion affecting foreign commerce. |
| 702<br>703<br>704 | 202. | <u>**Count 40:**</u> Attempted Extortion of $900,000.00 (face amount/amount known) from Plaintiff. |

13

| 705 | 203. | Paragraph 197 restated. |
| 706 | | |
| 707 | 204. | The Hobbs Act prohibits extortion affecting interstate commerce. |
| 708 | | |
| 709 | 205. | The Hobbs Act prohibits attempted extortion affecting foreign commerce. |
| 710 | | |
| 711 | 206. | The Hobbs Act prohibits attempted extortion affecting interstate commerce. |
| 712 | | |
| 713 | 207. | STATE OF TEXAS ET Al. attempted actions affected Plaintiff's ability to participate in |
| 714 | | interstate commerce. |
| 715 | | |
| 716 | 208. | STATE OF TEXAS ET Al. negatively affected the Plaintiff's ability in foreign |
| 717 | | commerce. |
| 718 | | |
| 719 | 209. | **Count 41:** Attempting extortion, affecting Plaintiff's standing in foreign commerce. |
| 720 | | |
| 721 | 210. | He used the mail, in foreign commerce, promoting the carrying on, of unlawful activity. |
| 722 | | |
| 723 | 211. | He knew the property in a financial transaction represented a form of unlawful activity. |
| 724 | | |
| 725 | 212. | He conducted a financial transaction which involved the proceeds of unlawful activity. |
| 726 | | |
| 727 | 213. | STATE OF TEXAS ET AL.'s intent was to promote the carrying on of specified |
| 728 | | unlawful activity; |
| 729 | | |
| 730 | 214. | These counts relate to 18 USC § Money Laundering 1956(a)(B)(i). See Exhs. F & AO. |
| 731 | | |
| 732 | 215. | **Count 42:** Knowingly concealing the nature of the specified unlawful activity. |
| 733 | 216. | **Count 43:** Knowingly concealing ownership of proceeds of specified unlawful activity. |
| 734 | 217. | **Count 44:** Knowingly concealed the source of proceeds of specified unlawful activity. |
| 735 | 218. | **Count 45:** Avoiding a transaction reporting requirement. (GLB, FDIC, FCRA Notice…) |
| 736 | 219. | STATE OF TEXAS ET AL.'s financial transactions are a part of a set of parallel or |
| 737 | | dependent transactions. |
| 738 | 220. | All of which are part of a single plan or arrangement. (req. of 18 USC § 1956(a)(B)(ii).). |
| 739 | 221. | The following charges relate to 18 USC §1956(a)(2) unlawful transfers. |
| 740 | 222. | **Count 46:** Transferred instrument used to disguise proceeds' nature of unlawful-activity. |
| 741 | 223. | **Count 47:** Transferring funds, knowing it to be disguising the unlawful nature. |
| 742 | | |
| 743 | 224. | The following relates to 18 USC §1956(a)(3) Intent to Carry On Unlawful Activities. |
| 744 | 225. | STATE OF TEXAS ET AL. demonstrated the intent to promote the carrying on of the |
| 745 | | unlawful activity. |
| 746 | 226. | 18 USC §1956 (a)(3) Carrying on Unlawful Activities, Penalties… |
| 747 | 227. | **Count 48:** Concealing the nature of the proceeds of specified unlawful activity. |
| 748 | 228. | **Count 49:** Concealing nature of property to avoid a transaction reporting requirement. |
| 749 | 229. | See Exhibit I 31 USC § 5312(a)(2): (2) "financial institution" means… |
| 750 | | See Exhibit J. Definition of Specified Unlawful Activity 18 USC §1961 |
| 751 | | See Exhibit L: § 1962. Prohibited activities |
| 752 | | |
| 753 | 230. | STATE OF TEXAS ET AL. is associated with interstate and foreign commerce. 18 USC |
| 754 | | 1962(c). |
| 755 | | |
| 756 | 231. | He engaged in collection of unlawful debt. 18 USC 1962(c). Collection of unlawful debt. |
| 757 | | |

14

| | | |
|---|---|---|
| 758<br>759 | 232. | See 18 USC § 659 Interstate or foreign shipments by carrier; State prosecutions. |
| 760<br>761 | 235. | STATE OF TEXAS ET AT; unlawfully took goods from a vehicle. (foreign) [18 USC § 659] |
| 762<br>763 | 236. | STATE OF TEXAS ET AL.'s intent was to convert these goods for his own use. [18 USC § 659] |
| 764<br>765 | 237. | STATE OF TEXAS ET AL. conspired with others to steal with the intent to convert. [18 USC § 659] |
| 766<br>767 | 238. | STATE OF TEXAS ET AL. as an accessory, enable a party, John Doe, to sell the stolen security of Plaintiff. |
| 768<br>769<br>770 | 239. | STATE OF TEXAS ET AL. is hiding the identity of the other parties (18 USC 4 Misprision of Felony)[§ 659]. |
| 771 | 240. | *It is a fraud to conceal a fraud. 1 Vern. 270.* |
| 772<br>773 | 241. | 18 USC § 659: Whoever embezzles, steals, or unlawfully takes, carries away, or conceals…with intent to <u>convert</u> to his own use…Shall be fined under this title… |
| 774<br>775 | 242. | Plaintiff restates all allegations and demands judgment for the Plaintiff. |
| 776<br>777<br>778 | 243. | STATE OF TEXAS ET AL. devised an artifice to defraud the Plaintiff. (18 USC § 1341 Frauds…) |
| 779 | 244. | Securities of American Citizens are some ways considered Foreign Securities as per: |
| 780<br>781<br>782 | | TITLE 15 § 78g(C) The term "foreign person controlled by a United States person" includes any noncorporate entity in which United States persons directly or indirectly have more than a 50 per centum beneficial interest…. |
| 783<br>784 | 245. | **Count 50:** Devising an artifice to defraud.  (18 USC 1341, Frauds and Swindles). |
| 785<br>786<br>787 | 246. | STATE OF TEXAS ET AL. devised a scheme for obtaining <u>money</u> by means of false pretenses. |
| 788<br>789 | 247. | **Count 51:** Devising a scheme for obtaining <u>money</u> by means of false pretenses. |
| 790<br>791<br>792 | 248. | STATE OF TEXAS ET AL. devised a scheme for obtaining <u>property</u> by means of false pretenses. |
| 793<br>794 | 249. | **Count 52:** Devising a scheme for obtaining <u>property</u> by means of false pretenses. |
| 795<br>796 | 250. | STATE OF TEXAS ET AL. procured a spurious-obligation, for unlawful use. |
| 797<br>798<br>799 | 251. | **Count 53:** STATE OF TEXAS ET AL. procured for unlawful use, a spurious-obligation. (18 USC 1341) |
| 800<br>801 | 252. | STATE OF TEXAS ET AL. procured for unlawful use, a security. |
| 802<br>803 | 253. | **Count 54:** STATE OF TEXAS ET AL. procured for unlawful use, a security. (18 USC 1341) |
| 804 | 254. | STATE OF TEXAS ET AT;'s purpose, was of executing the artifice. |
| 805<br>806 | 255. | **Count 55:** STATE OF TEXAS ET AL. placed the artifice in a post office. (18 USC 1341) |
| 807 | 256. | STATE OF TEXAS ET AT; conscripted the Postal Service for delivery of artifice. |
| 808<br>809 | 257. | **Count 56:** STATE OF TEXAS ET AL.'s violations occurred in involving a benefit authorized in connection with, a presidentially declared emergency (as those terms |

15

| | | |
|---|---|---|
| 810 | | are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency |
| 811 | | Assistance Act (42 U.S.C. 5122)). |
| 812 | 258. | 5122 Emergency Definitions. |
| 813 | | |
| 814 | | **EMERGENCY POWERS** |
| 815 | | |
| 816 | 259. | §1040 Fraud in connection with emergency benefits. |
| 817 | | |
| 818 | 260. | TITLE 42 § 5122... Definitions...(1) Emergency.— "Emergency." (See Exhibit N.) |
| 819 | 261. | TITLE 18 PART I CHAPTER 47 § 1040. Fraud in connection with...emergency |
| 820 | | benefits(a) Whoever, in a circumstance described in subsection (b) of this section, |
| 821 | | knowingly— (1) falsifies, conceals, or covers up by any trick, scheme, or device any |
| 822 | | material fact; or (2) makes any materially false, fictitious, or fraudulent statement or |
| 823 | | representation, ... ...the Commission urges this Court to hold that a person who has the |
| 824 | | requisite scienter can be liable as a primary violator of Section 10(b) of the Securities |
| 825 | | Exchange Act of 1934 and Rule 10b-5 thereunder when he or she, acting alone or with |
| 826 | | others, creates a misrepresentation, whether or not the person is identified with the |
| 827 | | misrepresentation by name. Respectfully submitted, RICHARD H. WALKER General |
| 828 | | Counsel JACOB H. STILLMAN Associate General Counsel, KATHARINE B. |
| 829 | | GRESHAM Assistant General Counsel CHRISTOPHER PAIK of Counsel Senior |
| 830 | | Counsel, PAUL GONSON, Solicitor, Securities and Exchange Commission, Washington, |
| 831 | | D.C. 20549, April 1998 (**KLEIN, KASTNER v. BOYD et al 3rd Circuit**. 97-1143; 1261 |
| 832 | | Brief of the Securities And Exchange Commission Amicus Curiae.) |
| 833 | | |
| 834 | 262. | **SEC Rule 10(b)-5:** It shall be unlawful for any person, directly or indirectly, by the use |
| 835 | | of any means or instrumentality of interstate commerce, or of the mails or of any facility |
| 836 | | of any national securities exchange, 1. To employ any device, scheme, or artifice to |
| 837 | | defraud, 2. To make any untrue statement of a material fact or to omit to state a material |
| 838 | | fact necessary in order to make the statements made, in the light of the circumstances |
| 839 | | under which they were made, not misleading, or3. To engage in any act, practice, or |
| 840 | | course of business which operates or would operate as a fraud or deceit upon any person, |
| 841 | | in connection with the purchase or sale of any security. |
| 842 | | |
| 843 | 263. | STATE OF TEXAS ET AT; knowingly falsified a matter involving a benefit paid related |
| 844 | | to an emergency. |
| 845 | 264. | STATE OF TEXAS ET AL. covered up material facts. |
| 846 | 265. | One material fact is that there is no actual debt for him to collect. See Pretexting |
| 847 | 266. | Another misrepresentation was that he was not representing holder in due course. |
| 848 | | "Contract" in the securities acts is a word of legal art. Without signed writings, |
| 849 | | consideration, and the other legal requirements for enforcement, there is no |
| 850 | | "contract...This is not mindless formalism. KAGAN v. EDISON BROTHERS 907 F.2d |
| 851 | | 690 59 USLW 2083, Fed. Sec. L. Rep. P 95,368, 13 UCC Rep.Serv.2d 1245, 7th Cir. 90). |
| 852 | | |
| 853 | 267. | STATE OF TEXAS ET AL.'s actions affected interstate commerce of the Plaintiff. |
| 854 | 268. | STATE OF TEXAS ET AL.'s actions affected foreign commerce of the Plaintiff. |
| 855 | 269. | STATE OF TEXAS ET AL. at points, involved the use of the mail. |
| 856 | 270. | The benefit was money of the United States. |
| 857 | 271. | The benefit was payment from an agency of the United States. |
| 858 | 272. | The right to benefit is a privilege of and for, the Plaintiff. |
| 859 | 273. | The following relates to emergency and gross negligence. |
| 860 | 274. | |

16

| | | |
|---|---|---|
| 861 | | **Count 57:** STATE OF TEXAS ET AL. with intent, knowingly falsified matters |
| 862 | | involving emergency benefits of transfer affecting interstate commerce, in procurement |
| 863 | | of property. |
| 864 | | |
| 865 | 275. | **Count 58:** STATE OF TEXAS ET AL. with intent, knowingly falsified matters |
| 866 | | involving emergency benefits of transfer affecting foreign commerce, in procurement of |
| 867 | | property. |
| 868 | | |
| 869 | 276. | **Count 59:** STATE OF TEXAS ET AL. with intent, knowingly falsified matters |
| 870 | | involving emergency benefits of covering up any material fact affecting interstate |
| 871 | | commerce. |
| 872 | | |
| 873 | 277. | **Count 60:** STATE OF TEXAS ET AL. with intent, knowingly falsified matters |
| 874 | | involving emergency benefits of covering up any material fact affects foreign commerce. |
| 875 | | |
| 876 | 278. | **Count 61:** STATE OF TEXAS ET AL. with intent, knowingly falsified matters |
| 877 | | involving emergency benefits, covering up material fact where the benefit is money of |
| 878 | | the United States. |
| 879 | | |
| 880 | 279. | **Count 62:** STATE OF TEXAS ET AL. with intent, knowingly falsified matters |
| 881 | | involving emergency benefits knowingly falsified a matter where the benefit is money of |
| 882 | | the United States. |
| 883 | | |
| 884 | 280. | The preceding counts are based on the verbiage of Fraud and Emergency… |
| 885 | | |
| 886 | 281. | **Emergency Legislation: 12 USC Banking §95a(2)** Any payment, conveyance, transfer, |
| 887 | | assignment, or delivery of property or interest therein, made to or for the account of the |
| 888 | | United States, or as otherwise directed, pursuant to this section or any rule, regulation, |
| 889 | | instruction, or direction issued hereunder (NOTE: FDIC, FRB, Acts, Swaps, Sec 33, |
| 890 | | Commodity Act, USDA, etc.) shall to the extent thereof be a full acquittance and |
| 891 | | discharge for all purposes of the obligation of the person making the same; **12 USC** |
| 892 | | **Banking § 95b.** Ratification of acts of President and Secretary of the Treasury under |
| 893 | | section 95a.The actions, regulations, rules, licenses, orders and proclamations heretofore |
| 894 | | or hereafter taken, promulgated, made, or issued by the President of the United States or |
| 895 | | the Secretary of the Treasury since <u>March 4, 1933</u>, pursuant to the authority conferred by |
| 896 | | section <u>95a</u> of this title, are approved and confirmed. |
| 897 | | |
| 898 | 282. | **(see Bond Power Exhibit AD) 50app. USC §2:** (end) The words "to trade," as used |
| 899 | | herein, shall be deemed to mean— (a) Pay, satisfy, compromise, or give security for the |
| 900 | | payment or satisfaction of any debt or obligation. (b) Draw, accept, pay, present for |
| 901 | | acceptance or payment, or indorse any negotiable instrument or chose in action. (c) Enter |
| 902 | | into, carry on, complete, or perform any contract, agreement, or obligation. (d) Buy or |
| 903 | | sell, loan or extend credit, trade in, deal with, exchange, transmit, transfer, assign, or |
| 904 | | otherwise dispose of, or receive any form of property. (e) To have any form of business |
| 905 | | or commercial communication or intercourse with. |
| 906 | | |
| 907 | 283. | "Hebrews 12:14 -Follow peace with all men and holiness: without which no man shall |
| 908 | | see God." |
| 909 | 284. | See Exhibit P For Emergency Banking Legislation in effect at time of violations. |
| 910 | 285. | **Count 63:** STATE OF TEXAS ET AL. knowingly acted in trading (civil) violations. |
| 911 | | (50ap USC §8(a)) |
| 912 | 286. | **Count 64:** STATE OF TEXAS ET AL. conspired an act of trading (civil) violations. |
| 913 | | (50ap USC §8(a)) |
| 914 | 287. | **Count 65:** STATE OF TEXAS ET AL. is an accessory to acts of trading (civil) |
| 915 | | violations. (50ap USC §8(a)) |
| 916 | 288. | Patriot Act Extended Emergency Provisions§ 363. |
| 917 | | |
| 918 | 289. | STATE OF TEXAS ET AL.'s trading violations damaged the Plaintiff. |

17

| | | |
|---|---|---|
| 919 | | |
| 920 | 290. | Powers are described in the war powers emergency banking & trading legislation. |
| 921 | | |
| 922 | 291. | **1933 Emergency (Trading)** § 8. (a) Any person …may be disposed of on notice or |
| 923 | | presentation or demand, and any person …who is a party to any <u>lawful</u> contract…may |
| 924 | | <u>continue</u> to hold said property… and, after default, may dispose of the property in |
| 925 | | accordance with law or may terminate or mature such contract by notice or presentation |
| 926 | | or demand served or made on the <u>alien property custodian</u> (Note: US Attorney General, |
| 927 | | and Secretary of Treasury\*) in accordance with the law and the terms of such instrument |
| 928 | | or contract. |
| 929 | | |
| 930 | 292. | (b) Any contract entered into… may be abrogated by such citizen or corporation |
| 931 | | by serving thirty days' notice in writing upon the alien property custodian of his or its |
| 932 | | election to abrogate such contract. §8. (c) no suit shall be maintained on any such |
| 933 | | contract or obligation in any court within the United States until after the end of the war, |
| 934 | | between the parties. |
| 935 | | |
| 936 | | |
| 937 | 294. | **Bank Secrecy Act**: 31 CFR MONEY § 5118 (c)(1) The Government withdraws its |
| 938 | | consent given to anyone to assert against the Government, its agencies, or its officers, |
| 939 | | employees, or agents, a claim-- (A) on a gold clause public debt obligation or interest on |
| 940 | | the obligation; |
| 941 | | |
| 942 | 295. | **Bank Secrecy Act** 5118(a)(1) In this section "gold clause" means a provision in or |
| 943 | | related to an obligation alleging to give the obligee a right to require payment in… a |
| 944 | | particular United States coin or currency;… |
| 945 | | |
| 946 | 296. | This is the reason for Federal Deposit Insurance, which paid STATE OF TEXAS ET |
| 947 | | AL.. |
| 948 | 297. | <u>**Count 65:**</u> STATE OF TEXAS ET AL. Depredated a government contract: FDIC |
| 949 | 298. | 12 USC FDIC § 1819. Corporate powers (a) …Upon June 16, 1933, the Corporation shall |
| 950 | | become a body corporate and as such shall have power— To sue and be sued, and |
| 951 | | complain and defend, by and through its own attorneys, in any court of law or equity, |
| 952 | | State or Federal. |
| 953 | | |
| 954 | 299. | This states that all deposits in Depository institutions are insured. |
| 955 | 300. | STATE OF TEXAS ET AL. claims to be collecting from an insured demand deposit |
| 956 | | account. |
| 957 | 301. | STATE OF TEXAS ET AL. claims to have put interest into the account. (Charges |
| 958 | | follow) |
| 959 | 302. | STATE OF TEXAS ET AL. calculated payments on the account in a type of Rule of 78s |
| 960 | | compound calculation. |
| 961 | 303. | The following is evidence, documents submitted from Peter Pratt designating property |
| 962 | | already has taken, for a larger view on what STATE OF TEXAS ET AT; took from |
| 963 | | Plaintiff. |
| 964 | | |
| 965 | 304. | § 1821. Insurance Funds (a) Deposit insurance (1) Insured amounts payable (A)… The |
| 966 | | Corporation shall insure the deposits of all insured depository institutions as provided in |
| 967 | | this chapter… (D) Certain contracts and agreements defined…:(i) Qualified financial |
| 968 | | contract The term "qualified financial contract" means any securities contract, (Note: see |
| 969 | | § 1464 below)… swap agreement (Note: See §206A GLB, 78c USC Title 15.)… (ii) |
| 970 | | Securities contract. The term "securities contract"— (I) means a contract for the |
| 971 | | purchase, sale, or loan of a security, a certificate of deposit,… (ii) |
| 972 | | securities, certificates of deposit…(XI) means a master agreement…subclause (I), (III), |
| 973 | | (IV), (V), (VI), (VII), (VIII), (IX), or (X), together… Exhibit AO has more. |
| 974 | | NOTE: 1023 combinations possible. See Exhibit Y for more on 12 USC § 1813. |
| 975 | | |

18

| | | |
|---|---|---|
| 976 | 305. | TITLE 12 FEDERAL DEPOSIT INSURANCE> § 1813. Definitions… (c) Definitions |
| 977 | | relating to depository institutions (1) Depository institution. The term "depository |
| 978 | | institution" means any bank or savings association…m) Insured deposit. (1) In general.— |
| 979 | | Subject to paragraph (2), the term "insured deposit" means the net amount due to any |
| 980 | | depositor for deposits in an insured depository institution…(p) Trust funds . The term |
| 981 | | "trust funds" means funds held by an insured depository institution in a fiduciary capacity |
| 982 | | and includes, without being limited to, funds held as trustee, executor, administrator, |
| 983 | | guardian, or agent. |

| | | |
|---|---|---|
| 984 | 306. | §3 Federal Deposit Insurance Act (l) The term "deposit" means-- |

| | | |
|---|---|---|
| 985 | | (1)  the unpaid balance of money or its equivalent received or held by a bank…for which |
| 986 | | it has given or is obligated to give credit, either conditionally or unconditionally, to a |
| 987 | | commercial, checking, savings, time, or thrift account, or which is evidenced by its |
| 988 | | certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, |
| 989 | | or other similar name, or a check or draft drawn against a deposit account and certified by |
| 990 | | the bank or savings association, or a letter of credit or a traveler's check on which the |
| 991 | | bank or savings association is primarily liable… |
| 992 | | |
| 993 | | (2) trust funds as defined in this Act received or held by such bank or savings |
| 994 | | association, whether held in the trust department or held or deposited in any other |
| 995 | | department of such bank or savings association, |
| 996 | | |

| | | |
|---|---|---|
| 997 | 307. | TITLE 12 >SAVINGS ASSOCIATIONS  CHAPTER 12 > § 1464(c) |

| | | |
|---|---|---|
| 998 | 308. | Here is STATE OF TEXAS ET AL.'s other market to sell his UCC § 3-303 fraudulent |
| 999 | | claim. |
| 1000 | | |

| | | |
|---|---|---|
| 1001 | 309. | See SEC regulations  for more of 1464's "investment" types (collateralization for |
| 1002 | | monetization). |
| 1003 | | |

| | | |
|---|---|---|
| 1004 | 310. | This is also  a complaint against the process of the Federal Reserve. |
| 1005 | | |

| | | |
|---|---|---|
| 1006 | 311. | It is STATE OF TEXAS ET AL. who could not validate his claim, and many others |
| 1007 | | violations come to light. |
| 1008 | | |

| | | |
|---|---|---|
| 1009 | 312. | § 1464. Federal savings associations…(c) Loans and investments. To the extent specified |
| 1010 | | in regulations of the Director, a Federal savings association may invest in, sell, or |
| 1011 | | otherwise deal in the following loans and other investments: 1) Loans or investments |
| 1012 | | without percentage of assets limitation Without limitation as a percentage of assets, the |
| 1013 | | following are permitted: (A) Account loans…Loans on the security of its savings |
| 1014 | | accounts and loans specifically related to transaction accounts… (G) Deposits. |
| 1015 | | Investments in accounts of any insured depository institution, as defined in section 3 of |
| 1016 | | the Federal Deposit Insurance Act [12 U.S.C. 1813]. (NOTE: See Exhibit X) (H) State |
| 1017 | | securities.  Investments in obligations issued by any State or political subdivision thereof |
| 1018 | | (including any agency, corporation, or instrumentality of a State or political |
| 1019 | | subdivision)… (L) Loans to financial institutions, brokers, and dealers. Loans to— (i) |
| 1020 | | financial institutions with respect to which the United States or an agency or |
| 1021 | | instrumentality thereof has any function of examination or supervision, or (ii) any broker |
| 1022 | | or dealer registered with the Securities and Exchange Commission, which are secured by |
| 1023 | | loans, obligations, or investments in which the Federal savings association has the |
| 1024 | | statutory authority to invest directly. (M) Liquidity investments…bankers' acceptances… |
| 1025 | | (T) Credit card loans. Loans made through credit cards or credit card |
| 1026 | | accounts…[Codified to 12 U.S.C. 1971] |
| 1027 | | |

| | | |
|---|---|---|
| 1028 | 313. | **18 USC § 1972. Certain tying arrangements prohibited; correspondent accounts** |
| 1029 | | (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or |
| 1030 | | furnish any service, or fix or vary the consideration for any of the foregoing, on the |
| 1031 | | condition or requirement— (C) that the customer provide some additional credit, |
| 1032 | | property, or service to such bank, other than those related to and usually provided in |
| 1033 | | connection with a loan, discount, deposit, OR trust service; (NOTE: General accounting |
| 1034 | | principles still apply to § 1972..) |
| 1035 | | |

19

| | | |
|---|---|---|
| 1036 | 314. | A bank holding company is a bank. As defined in §2 Bank Holding Company Act. |
| 1037 | | |
| 1038 | 315. | See definition of BANK HOLDING COMPANY) see Bank Holding Company Defined. |
| 1039 | | |
| 1040 | 316. | Plaintiff re-asserts there was no contract and therefore no debt ever established with |
| 1041 | | STATE OF TEXAS ET AL. |
| 1042 | | |
| 1043 | 317. | Banks cannot loan their own money. Section 35 National Banking Act states "That no |
| 1044 | | association shall make any loan or discount on the security of the shares of its own capital |
| 1045 | | stock. (**National Banking Act § 35**) |
| 1046 | 318. | Plaintiff wishes to compel the Defendant as to where the proceeds of the DISCOUNT, |
| 1047 | | DEPOSIT, and TRUST services have accumulated in relationship to purported account. |
| 1048 | 319. | **Count 67:** Extending credit, as a bank, on the condition or requirement that the customer |
| 1049 | | shall obtain some additional credit, from a bank. (BHA USC §1972). |
| 1050 | | |
| 1051 | 320. | **Count 68:** selling property of any kind, as a bank on the condition or requirement—the |
| 1052 | | customer obtain additional credit from a bank. (BHA USC §1972). (security) |
| 1053 | | |
| 1054 | 321. | STATE OF TEXAS ET AL. bought and sold Plaintiff's *personal* security under color of |
| 1055 | | law. KKK Act §1983. |
| 1056 | | |
| 1057 | 322. | STATE OF TEXAS ET AT; literally traded, the Plaintiff's credit, for payment in full (12 |
| 1058 | | USC1821(a)1(A)(i)). |
| 1059 | | |
| 1060 | 323. | See (12 USC 1821(a)1(A)(i)). |
| 1061 | | |
| 1062 | 324. | **Count 69:** Selling property on requirement the customer obtain or provide additional |
| 1063 | | credit to a bank. (12 USC 1972 (b)(1)(D)) (Attempted) |
| 1064 | | |
| 1065 | 325. | **Count 70:** Fixing the consideration for any of the foregoing, on the condition or require- |
| 1066 | | ment that the customer shall obtain some additional service from a bank. (1972 (b)(1) as |
| 1067 | | per FCRA violations. |
| 1068 | | |
| 1069 | 326. | **Count 71:** Varying the consideration for any of the foregoing, on the requirement that the |
| 1070 | | customer shall obtain some additional credit from a bank. 12 USC 1972 (b)(1) as per |
| 1071 | | FCRA violations. |
| 1072 | | |
| 1073 | 327. | **Count 72:** Fixing the consideration on the condition or requirement that the customer |
| 1074 | | shall obtain some additional service from a bank. (12 USC 1972 (1)(B)). |
| 1075 | | |
| 1076 | 328. | **Count 73:** Fixing the consideration for any of the foregoing, on the condition or |
| 1077 | | requirement that the customer provide some service to a bank. 12 USC 1972 (b)(1)(D). |
| 1078 | | |
| 1079 | 329. | **Count 74:** Varying the consideration for any of the foregoing, on the condition or |
| 1080 | | requirement that the customer shall obtain some additional service from a bank. |
| 1081 | | |
| 1082 | 330. | **Count 75:** Varying the consideration for any of the foregoing, on the condition or |
| 1083 | | requirement, that the customer provide some service to a bank. (§1972(b)(1)). |
| 1084 | | |
| 1085 | 331. | Chairman Benjamin Bernanke the Governor said in 2002, ["What has this got to do with |
| 1086 | | monetary policy? Like gold, U.S. dollars have value only to the extent that they are |
| 1087 | | strictly limited in supply. But the U.S. government has a technology, called a printing |
| 1088 | | press (or, today, its electronic equivalent), that allows it to produce as many U.S. dollars |
| 1089 | | as it wishes at essentially no cost. By increasing the number of U.S. dollars in circulation, |
| 1090 | | or even by credibly threatening to do so, the U.S. government can also reduce the value |
| 1091 | | of a dollar in terms of goods and services, which is equivalent to raising the prices in |
| 1092 | | dollars of those goods and services. We conclude that, under a paper-money system, a |
| 1093 | | determined government can always generate higher spending and hence positive |
| 1094 | | inflation. Of course, the U.S. government is not going to print money and distribute it |
| 1095 | | willy-nilly (although as we will see later, there are practical policies that approximate this |

20

| | |
|---|---|
| 1096 | behavior).[8] 8. Keynes, however, once semi-seriously proposed, as an anti-deflationary |
| 1097 | measure, that the government fill bottles with currency and bury them in mine shafts to |
| 1098 | be dug up by the public.] |
| | |
| 1099 | 332. http://www.federalreserve.gov/boarddocs/speeches/2002/20021121/default.htm#f8 |
| | |
| 1100 | 333A. **PACIFIC MUTUAL LIFE INSURANCE CO. *v.* HASLIP, *et al.*** |
| 1101 | No. 89-1279 [March 4, 1991] *Justice Kennedy,* concurring in the judgment... |
| 1102 | Our legal tradition is one of progress from fiat to rationality... not as a |
| 1103 | matter of ipse dixit... The law encompasses standards phrased at varying |
| 1104 | levels of generality... the standard can be more abstract and general to give |
| 1105 | the adjudicator flexibility in resolving the dispute at hand. These features of |
| 1106 | the jury system for assessing punitive damages discourage uniform results, |
| 1107 | but non-uniformity **cannot** be equated with constitutional infirmity... We do |
| 1108 | not have the authority, as do judges in some of the States, to alter the rules of |
| 1109 | the common law respecting the proper standard for awarding punitive |
| 1110 | damages ... We are confined in this case, however, to interpreting the |
| 1111 | Constitution, and from this perspective I agree that we must reject the |
| 1112 | arguments advanced by petitioner. For these reasons I concur in the |
| 1113 | judgment of the Court. |
| 1114 | |
| 1115 | 333B. Plaintiff restates all allegations and demands judgment for the Plaintiff. |
| 1116 | |
| 1117 | 334. STATE OF TEXAS ET AL. purports to be collecting on a "loan, (stemming from a |
| 1118 | contract never produced as evidence that any such contract exists"- inserted by author). |
| 1119 | (National Banking Act § 35) |
| | |
| 1120 | 335. **Miller v. Javitch, Block and Rathbone**, 561 F.3d 588 (6th Cir. 2009) |
| | |
| 1121 | 336. "Apparently, Javitch hopes that by styling its pleading as "for money loaned" rather than |
| 1122 | "on an account" and altering the language to make the action sound more like a suit for a |
| 1123 | traditional loan of money, it can avoid the burdens imposed by Rule 10(D)(1). |
| | |
| 1124 | 337. "While it seems unlikely that state trial judges will agree, given that the superficial |
| 1125 | change in wording does not change the substance of the suit, which remains a suit for |
| 1126 | credit-card debt founded both on an account and on a written instrument, defendants may |
| 1127 | pursue this litigation strategy as long as it does not violate the FDCPA in the process. |
| | |
| 1128 | 338. "C. The fact that the confusing language was not entirely intended to mislead debtors |
| 1129 | does not exempt it from the requirements of the FDCPA |
| | |
| 1130 | 339. "The fact that Javitch did not draft the confusing language with the debtor solely in mind |
| 1131 | does not change the fact the debtor who receives such a complaint may be confused by it |
| 1132 | and may suffer as a result.    Nor does it negate the possibility that Javitch intended the |
| 1133 | confusing language to mislead the debtor. |
| | |
| 1134 | 340. "First, the least-sophisticated debtor might reasonably believe that the suit is for some |
| 1135 | kind of traditional loan of money.    If the debtor has not taken out such a loan, or has |
| 1136 | taken out such a loan but has disposed of it in some way, she might ignore the suit, |
| 1137 | resulting in a default judgment (obviously a desirable outcome for Javitch). |
| | |
| 1138 | 341. "Second, if the debtor simply does not understand from the document the debt to which it |
| 1139 | refers, she might be less likely to contest the suit, again making a default judgment more |
| 1140 | likely.    See also Muha, 558 F.3d at 629, 2009 WL 593135, at *5 ("Confusing language |
| 1141 | in a dunning letter can have an intimidating effect by making the recipient feel that he is |
| 1142 | in over his head and had better pay up rather than question the demand for payment."). |
| | |
| 1143 | 342. "Third, the debtor might be led to believe that the "money loaned" consisting of "the sum |
| 1144 | of $4,604.56" is a fixed amount that is not susceptible to the types of defenses a debtor |
| 1145 | can assert in an action for collection of credit-card debt, such as contested or improper |
| 1146 | charges, improper additions of fees after the debt has been charged off, or other violations |
| 1147 | of the lending agreement.    See Muha, 558 F.3d at 629, 2009 WL 593135, at *5 ("The |
| 1148 | intimidating effect may have been magnified by [language that] might have suggested to |

21

| 1149 | | an unsophisticated consumer that any right he might have to challenge the demand for |
| 1150 | | payment had been extinguished"). |
| | | |
| 1151 | 343. | Evidence of financial instruments value |
| | | |
| 1152 | 344. | **Money and Banking A Market Oriented Approach 3rd ed. by Johnson and Roberts** |
| 1153 | | **p176: COMMERCIAL BANK LIABILITIES.** The primary source of funds that |
| 1154 | | enables a commercial bank to acquire assets is the bank's deposit liabilities. Deposit |
| 1155 | | liabilities of commercial banks are assets of individuals, business firms, and |
| 1156 | | governments, and are held by these parties because the commercial bank offers explicit |
| 1157 | | interest payments and/or services... A commercial bank creates deposit liabilities when it |
| 1158 | | receives the deposit of an asset, usually in the form of cash or other reserves. Although |
| 1159 | | most of the bank's liabilities are deposits of one kind or another, the holders of these |
| 1160 | | deposits usually do not think of themselves as lending money to the bank. The bank, in |
| 1161 | | fact, is borrowing the funds from the depositors for varying lengths of time. |

343. Evidence of financial instruments value

344. **Money and Banking A Market Oriented Approach 3rd ed. by Johnson and Roberts p176: COMMERCIAL BANK LIABILITIES.** The primary source of funds that enables a commercial bank to acquire assets is the bank's deposit liabilities. Deposit liabilities of commercial banks are assets of individuals, business firms, and governments, and are held by these parties because the commercial bank offers explicit interest payments and/or services... A commercial bank creates deposit liabilities when it receives the deposit of an asset, usually in the form of cash or other reserves. Although most of the bank's liabilities are deposits of one kind or another, the holders of these deposits usually do not think of themselves as lending money to the bank. The bank, in fact, is borrowing the funds from the depositors for varying lengths of time.

345. Further evidence loans are established in demand deposit accounts.

346. **Money and Banking A Market Oriented Approach 3rd ed. by Johnson and Roberts p177** banks generally extend loans by creating a demand deposit for the borrower. Of course, the newly created deposit usually is withdrawn as the borrower uses the funds. Prior to the development of deposits, commercial banks created bank notes, as explained in "Bank Notes and Deposits" page 178.

347. Evidence of the history and growth of demand deposits.

348. **Money and Banking A Market Oriented Approach 3rd ed. by Johnson and Roberts P178 4th paragraph.** The intent of the National Bank Act and of the 10 percent tax was to cause banks to apply for federal charters as National banks. Although the initial effect was to cause banks to shift over to being National Banks, this did not continue. State banks continued in operation and were able to flourish by adjusting to the use of demand deposits rather than the note issue. In 1867, currency in circulation amounted to $585 million, and the total amount of deposits amounted to $729 million. By 1877 deposits had grown to $1166 million, and the amount of currency had dropped to $514 million[b]. ([b] Friedman, Milton, and Schwartz, Anna J. A monetary History of the United States, 1867-1960. (Princeton University Press), Table A-1:7-4.

349. Section 35 NBA states "That no association shall make any loan or discount on the security of the shares of its own capital stock. (National Banking Act § 35)

350. STATE OF TEXAS ET AL. made a security on a debt contracted not-in-good-faith. (NBA § 35)

351. STATE OF TEXAS ET AL. conspired to pledge and hypothecate notes of the Plaintiff. (NBA § 37)

352. STATE OF TEXAS ET AL.'s association's purpose was to increase its capital stock. (NBA §37)

353. STATE OF TEXAS ET AL. has attempted to collect a debt regarding an association that contemplated or commissioned insolvency. (Section 52 NBA)

354. STATE OF TEXAS ET AL. falsely made a note purporting to be real. (NBA Section 59)
355. for more refer to the National Banking Act.

356. NBA §35. And be it further enacted, that no association shall make any loan or discount on the security of the shares of its own capital stock...

357. NBA §37. And be it further enacted, That no association shall, either directly or indirectly, pledge or hypothecate any of its notes of circulation, for the purpose of procuring money to be paid in on its capital stock, or to be used in its banking operations, or otherwise; nor shall any association use its circulating notes, or any part thereof, in any manner or form, to create or increase its capital stock.

22

| | | |
|---|---|---|
| 1206 | 358. | SEC. 52. And be it further enacted, That all transfer of the notes, bonds, bills of |
| 1207 | | exchange, and other evidences of debt owing to any association, or of deposits to its |
| 1208 | | credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in |
| 1209 | | its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use |
| 1210 | | of any of its shareholders or creditors; and all payments of money to either, made after |
| 1211 | | the commission of an act of insolvency, or in contemplation thereof, with a view to |
| 1212 | | prevent the application of its assets in the manner prescribed by this act, or with a view to |
| 1213 | | the preference of one creditor to another, except in payment of its circulating notes, shall |
| 1214 | | be utterly null and void. |

1215  359.  SEC. 59. And be it further enacted, That if any person shall falsely make, forge, or
1216        counterfeit, or cause or procure to be made, forged, or counterfeited, or willingly aid or
1217        assist in falsely making, forging, or counterfeiting, any note in imitation of, or purporting
1218        to be in imitation of, the circulating notes issued under the provisions of this act, or shall
1219        pass, utter, or publish, or attempt to pass, utter, or publish, any false, forged, or
1220        counterfeited note, purporting to be issued by any association doing a banking business
1221        under the provisions of this act, knowing the same to be falsely made, forged, or
1222        counterfeited, or shall falsely alter, or cause or procure to be falsely altered, or willingly
1223        aid or assist in falsely altering, any such circulating notes, issued as aforesaid, or shall
1224        pass, utter, or publish, or attempt to pass, utter, or publish, as true, any falsely altered or
1225        spurious circulating note issued, or purporting to have been issued, as aforesaid, knowing
1226        the same to be falsely altered or spurious, every such person shall be deemed and
1227        adjudged guilt of felony, and being thereof convicted by due course of law shall be
1228        sentenced to be imprisoned and kept at hard labor for a period of not less than five years,
1229        nor more than fifteen years, and fined in a sum not exceeding one thousand dollars.

1230  360.  12 USC § 1972 Certain Tying Arrangement Prohibited.

1231  361.  (e) Any person who is injured in his business or property by reason of anything forbidden
1232        in subsection (b) may sue therefore in any district court of the United States in which the
1233        defendant resides or is found or has an agent, without regard to the amount in
1234        controversy, and shall be entitled to recover three times the amount of the damages
1235        sustained by him, and the cost of suit, including a reasonable attorney's fee.  [Codified to
1236        12 U.S.C. 1975] [Source:  Section 106(e) of title I of the Act of December 31, 1970 (Pub.
1237        L.No.91--607; 84 Stat. 1767), effective December 31, 1970]
1238
1239  362.  (f) Any person may sue for and have injunctive relief, in any court of the United States
1240        having jurisdiction over the parties, against threatened loss or damage by reason of a
1241        violation of subsection (b), under the same conditions and principles as injunctive relief
1242        against threatened conduct that will cause loss or damage is granted by courts of equity
1243        and under the rules governing such proceedings. Upon the execution of proper bond
1244        against damages for an injunction improvidently granted and a showing that the danger of
1245        irreparable loss or damage is immediate a preliminary injunction may issue. [Codified to
1246        12 U.S.C. 1976] [Source:  Section 106(f) of title I of the Act of December 31, 1970 (Pub.
1247        L. No. 91--607; 84 Stat. 1767)....]…
1248
1249  363.  (H)  NOTICE UNDER THIS SECTION AFTER SEPARATION FROM SERVICE.--
1250        The resignation, termination of employment or participation, or separation of an
1251        institution-affiliated party…(including a separation caused by the closing of such a bank)
1252        shall not affect the jurisdiction and authority of the appropriate Federal banking agency to
1253        issue any notice and proceed under this section against any such party, if such notice is
1254        served before the end of the 6-year period beginning on the date such party ceased to be
1255        such a party with respect to such bank (whether such date occurs before, on, or after the
1256        date of the enactment of this subparagraph).   [Codified to 12 U.S.C. 1972]
1257
1258  364.  See  the Federal Reserve criteria for extensions of credit (eligibility of paper.)
1259
1260  365.  Consumer loans are commercial and Uniform Commercial Code applies, as applies to the
1261        mortgage trust agreement with (ROYAL NEIGHBORS OF AMERICA).
1262
1263  366.  STATE OF TEXAS ET AL. may say consumer is not part of a commercial transaction.
1264        This says otherwise.
1265

<div align="center">23</div>

367. Title 12: Banks and Banking: <u>PART 201—EXTENSIONS OF CREDIT BY FEDERAL RESERVE BANKS (REGULATION A)</u> § 201.104  Eligibility of consumer loans and finance company paper.(b) Section 13, paragraph 2, of the Federal Reserve Act authorizes a Federal Reserve Bank…discount for member banks * * * notes, drafts, and bills of exchange arising out of actual commercial transactions; that is, notes, drafts, and bills of exchange issued or drawn for agricultural, industrial, or commercial purposes…(c)…loans made to enable consumers to purchase automobiles or other goods should be included under commercial, agricultural, and industrial paper within the meaning of the Federal Reserve Act, and as such are eligible for discounting.

368. "Commercial Banks and Money Creation. Traditionally, commercial banks differed from other financial intermediaries in the only they could create money in the form of new demand deposit balances by making loans. Because demand deposits (checking accounts) represent the core medium of exchange in the U.S. economy and because commercial banks still create most of the demand deposit dollars that circulate in the U.S. economy, The Federal Reserve's primarily uses the nation's 9,500 commercial banks to implement its monetary policy. This relationship also is illustrated in exhibits.

369. STATE OF TEXAS ET AL. used his rights under this act for settlement of a "debt" in the Plaintiff's name.

370. But STATE OF TEXAS ET AL. mysteriously did not credit the settlement to the Plaintiff's account.

371. The reason for this was to hide the fact that he was not the holder in due course.

372. The reason also, was to hide the fact that he had committed unauthorized arbitrage.

373. He served in this directly and as accessory.

374. STATE OF TEXAS ET AL. participated in commerce as defined in § 2(e) defining "trade."

375. Further evidence that STATE OF TEXAS ET AL. are codified in war powers legislation:

376. 50app. §8(c) The running of any statute of limitations shall be suspended with reference to the rights or remedies… containing any promise to pay or liability for payment which is evidenced by drafts or other commercial paper drawn… and

377. 50app. §8(c) ….prior to the beginning of the war between parties neither of whom is an enemy or ally of enemy,….no suit shall be maintained on any….obligation, in any court. (NOTE: pertains to <u>lawful</u> contracts)
This means we are not enemies <u>and</u> not in court, or we are enemies <u>and</u> in court.

378. STATE OF TEXAS ET AL. defrauded a court against the Plaintiff. (50app USC §8(c)

379. 50 App. Trading Act §5 Suspension of provisions relating to ally of enemy; regulation of transactions in…property transfers, vested interests…

380. (a) President may grant licenses…

381. (b)(1) During the time of war, …any transactions…involving, any person, or with respect to any property, the President may…require the production, or if necessary to the national security or defense, the seizure

382. (2) Any payment, conveyance, transfer, assignment, or delivery of property or interest therein, made to or for the account of the United States, or as otherwise directed, pursuant to this subdivision or any rule, regulation, instruction, or direction issued hereunder shall to the extent thereof be a full acquittance and discharge for all purposes of the obligation of the person making the same; and no person shall be held liable in any court for or in respect to anything done or omitted in good faith in connection with the administration of, or in pursuance of and in reliance on, this subdivision, or any rule, regulation, instruction, or direction issued hereunder.

24

| | | |
|---|---|---|
| 1322<br>1323<br>1324<br>1325<br>1326 | 383. | (3) As used in this subdivision the term "United States" means the United States and <u>any</u> <u>place subject to the jurisdiction</u> thereof…As used in this subdivision the term "person" means an individual, partnership, association, or corporation.<br>See GSA and Government Status (18 USC 666(d)(2)) |
| 1327<br>1328<br>1329<br>1330<br>1331<br>1332 | 384. | 18 USC § 1007. Federal Deposit Insurance Corporation transactions<br>Whoever, for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation, knowingly makes or invites reliance on a false, forged, or counterfeit statement, document, or thing shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. |
| 1333<br>1334<br>1335 | 385. | <u>Count 76:</u> STATE OF TEXAS ET AL. knowingly made or invited reliance on false statements. |
| 1336<br>1337<br>1338<br>1339<br>1340<br>1341 | 386. | **TITLE 18. …Theft, CHAPTER 31 § 657. Lending, credit and insurance…**<br>Whoever… connected in any capacity with the Federal Deposit Insurance Corporation…embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise in trusted to its care, shall be fined… |
| 1342<br>1343 | 387. | STATE OF TEXAS ET AL. is working in a capacity with Federal Deposit Insurance Corporation. (§ 657) |
| 1344 | 388. | STATE OF TEXAS ET AL. was as an agent of a receiver. |
| 1345 | 389. | STATE OF TEXAS ET AL. is a financial receiver. |
| 1346 | 390. | The property suffering conversion belongs to the Plaintiff. (18 USC § 657 Theft). |
| 1347<br>1348<br>1349 | 391. | STATE OF TEXAS ET AL. would not validate his account, by submission of a bankruptcy form B-10 but has relied on a voidable court judgment lacking completely in due process. |
| 1350 | 392. | Plaintiff restates all allegations and Plaintiff demands judgment, in a trial by jury. |
| 1351 | 393. | Title 18 Chapter 31 § 656. Theft…misapplication by bank officer or employee. |
| 1352<br>1353<br>1354 | 394. | Whoever, being connected in any capacity with any Federal Reserve bank, or insured bank (etc.) abstracts or willfully misapplies any of the moneys, funds of such bank, shall be fined. |
| 1355<br>1356<br>1357 | 395. | STATE OF TEXAS ET AL. is an "agent" connected to an insured member bank. (18 USC §656) |
| 1358<br>1359<br>1360 | 396. | <u>Count 77:</u> STATE OF TEXAS ET AL. abstracted moneys of such banks, that was property of the Plaintiff. |
| 1361<br>1362 | 397. | <u>Count 78:</u> Willfully misapplying moneys such bank, which were property of Plaintiff. |
| 1363<br>1364 | 398. | 18 USC § 1005 Bank entries Reports and Transactions: Whoever makes any false Statement… with intent to injure or defraud…shall be fined… |
| 1365<br>1366<br>1367<br>1368<br>1369 | 399. | Whoever with intent to defraud the United States or any agency thereof, or any financial institution referred to in this section, participates or shares in or receives (directly or indirectly) any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such financial institution— Shall be fined |
| 1370 | 400. | STATE OF TEXAS ET AL. made false representations. |
| 1371<br>1372 | 401. | STATE OF TEXAS ET AL. attempted to receive monies from the false representations in the following ways: |
| 1373<br>1374 | 404. | In contempt, STATE OF TEXAS ET AL. issued in State court, false representation, (§1005 transactions.) |

25

| | | |
|---|---|---|
| 1375<br>1376 | 405. | He attempted to convert funds of the Plaintiff for STATE OF TEXAS ET AT;'s own personal gain. |
| 1377 | 406. | STATE OF TEXAS ET AL., without authority, issued the obligation. |
| 1378<br>1379<br>1380 | 407. | **Count 79:** STATE OF TEXAS ET AL. committed drawing a debenture without authority. (§1005). |
| 1381<br>1382<br>1383 | 408. | **Count 80:** STATE OF TEXAS ET AL. made a false entry in a book.(§ 1005 Bank entries, +following 2). |
| 1384<br>1385<br>1386 | 409. | **Count 81:** STATE OF TEXAS ET AL. made a false statement with intent to injure or defraud Plaintiff. |
| 1387<br>1388<br>1389<br>1390 | 410. | **Count 82:** STATE OF TEXAS ET AL. made a false statement with intent to injure or defraud the court.<br>Plaintiff shows a preponderance of evidence that the INTENT to injure is in order to collect on the master agreement multiple derivative Credit Default Swap payments. |
| 1391 | 411. | That's the motive of intent to injure; evidence is throughout this case. |
| 1392<br>1393<br>1394<br>1395<br>1396 | 412. | Title 18 § 1344. Bank fraud: Whoever knowingly executes, or attempts to execute, a scheme or artifice— (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined… |
| 1397<br>1398<br>1399 | 413. | STATE OF TEXAS ET AL. knowingly executed a scheme, with artifice, to defraud financial institutions: |
| 1400<br>1401 | 414. | See Exhibit I for definition of Financial Institution. (31 USC § 5312). |
| 1402<br>1403<br>1404<br>1405 | 415. | The Financial Institutions include; The Plaintiff ,The Federal Deposit Insurance Company, The Federal Reserve, State of Texas, Douglas County Court of Kansas, United States Bankruptcy Court of Kansas, and The United States of America. |
| 1406<br>1407 | 416. | (Plaintiff is a Financial institution, specifically as per 31 USC §5312 (a) (2) (k)). |
| 1408<br>1409 | 417. | Plaintiff restates all allegations and demands judgment for the Plaintiff. |
| 1410<br>1411 | 418. | **Count 83:** Obtaining monies from under the custody of a financial institution. (§ 1344). |
| 1412<br>1413 | 419. | **Count 84:** Using means of false or fraudulent pretenses, and representations. (§1344). |
| 1414<br>1415 | 420. | § 287. False, fictitious or fraudulent claims |
| 1416<br>1417<br>1418<br>1419<br>1420<br>1421 | 421. | Whoever makes or presents to any person or officer in the civil… service of the United States, or to any department or agency thereof, any claim upon…. the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title. |
| 1422<br>1423 | 422. | **Count 85:** § 287. False, fictitious or fraudulent claims. Presenting to officer… |
| 1424<br>1425<br>1426<br>1427 | 423. | STATE OF TEXAS ET AL. presented to a person or officer in the service of the United States a claim upon the United States (FDIC, NJ Court, 666d2 Plaintiff), knowing such claim to be false, or fraudulent. |
| 1428<br>1429 | 424. | **Count 86:** STATE OF TEXAS ET AL. falsified material facts. (18 USC §1001) |
| 1430<br>1431 | 425. | **Count 87:** STATE OF TEXAS ET AL. concealed a material fact; (18 USC §1001) |

26

| | | |
|---|---|---|
| 1432 | 426. | **Count 88:** STATE OF TEXAS ET AL. covered up scheme by material fact. (18 USC |
| 1433 | | § 1001.) |
| 1434 | | |
| 1435 | 427. | **Count 89:** STATE OF TEXAS ET AL. made use of false writings knowing they contain |
| 1436 | | materially false statements. |
| 1437 | | |
| 1438 | 428. | Title 18 Chapter 47 § 1001. Statements or entries generally (a) ...whoever,... willfully— |
| 1439 | 429. | (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) |
| 1440 | | makes any materially false, fictitious, or fraudulent statement or representation; or |
| 1441 | | (3) makes or uses any false writing or document knowing the same to contain any |
| 1442 | | materially false, fictitious, or fraudulent statement or entry; shall be fined under this |
| 1443 | | title... |
| 1444 | | |
| 1445 | 430. | The material facts were he was pretexting- and never had a provable claim. |
| 1446 | 431. | *Under pretext of legality, what is illegal ought not to be admitted. 10 Co. 88.* |
| 1447 | 432. | **Count 90:** He made false entry in book, intent to defraud, by agent connected with FDIC. |
| 1448 | | |
| 1449 | 433. | **Count 91:** He put forth a debenture, intent to defraud, by agent connected with FDIC. |
| 1450 | | |
| 1451 | 434. | **Count 92:** He conspired with others to assign a note with intent to defraud the Plaintiff. |
| 1452 | | |
| 1453 | 435. | With intent to defraud, STATE OF TEXAS ET AL. benefitted through these transactions. |
| 1454 | | (§ 1006 Federal). |
| 1455 | | |
| 1456 | 436. | 18 USC § 1006. Federal credit institution entries, reports and transactions |
| 1457 | | Whoever, being an officer, agent or employee of or connected in any capacity with the |
| 1458 | | Federal Deposit Insurance Corporation, ...with intent to defraud any such institution or |
| 1459 | | any other company, body politic or corporate, or any individual, or to deceive any officer, |
| 1460 | | auditor, examiner or agent of any such institution or of department or agency of the |
| 1461 | | United States, makes any false entry in any book, report or statement of or to any such |
| 1462 | | institution, or without being duly authorized, draws any order or bill of exchange, makes |
| 1463 | | any acceptance, or issues, puts forth or assigns any note, debenture, bond or other |
| 1464 | | obligation, or draft, bill of exchange, mortgage, judgment, or decree, or, with intent to |
| 1465 | | defraud the United States or any agency thereof, or any corporation, institution, or |
| 1466 | | association referred to in this section, participates or shares in or receives directly or |
| 1467 | | indirectly any money, profit, property, or benefits through any transaction, loan, |
| 1468 | | commission, contract, or any other act of any such corporation, institution, or association, |
| 1469 | | shall be fined... |
| 1470 | | |
| 1471 | 437. | See Exhibit AI For Demand Deposit Definitions and Prohibition on Interest Payments |
| 1472 | | into Demand Deposit Accounts. |
| 1473 | 438. | 12 USC § 371a...No member bank shall...pay any interest on any deposit |
| 1474 | | which is payable on demand... |
| 1475 | | |
| 1476 | 439. | 12 CFR § 217.3...No member bank of the Federal Reserve System shall... pay any |
| 1477 | | interest on any demand deposit. |
| 1478 | 440. | When banks lend, they create demand deposits which are money. By extending credit, |
| 1479 | | the Wahoo bank has "monetized" an IOU. The Grisley Company and the Wahoo bank |
| 1480 | | have created and then swapped claims. The claim created by the Grisley Company and |
| 1481 | | given to the bank is not money; an individual's IOU is not generally acceptable as a |
| 1482 | | medium of exchange. But the claim created by the bank and given to the Grisley |
| 1483 | | Company is money; checks drawn against a demand deposit are acceptable as a medium |
| 1484 | | of exchange. It is through the extension of credit by commercial banks that the bulk of |
| 1485 | | the money in our economy is created. (*Economics Principles, Problems, and Policies*, 6th |
| 1486 | | Edition, McConell p 315 |
| 1487 | | |
| 1488 | 440A. | Title 12: Banks and Banking PART 217—PROHIBITION AGAINST THE PAYMENT |
| 1489 | | OF INTEREST ON DEMAND DEPOSITS (REGULATION Q) § 217.1  Authority, |

27

purpose, and scope.(a) Authority. This part is issued under the authority of section 19 of the Federal Reserve Act (12 U.S.C. 371a, 461, 505), section 7 of the International Banking Act of 1978 (12 U.S.C. 3105), section 11 of the Federal Reserve Act (12 U.S.C. 248), and section 8 of the Federal Deposit Insurance Act (12 U.S.C. 1818), unless otherwise noted.(b) Purpose. This part prohibits the payment of interest on demand deposits by member banks and other depository institutions within the scope of this part.

441.  **The reason for Regulation Q is:**
"...because demand deposits are the core components of the nation's money supply and because they are created in the commercial lending process.... (Money & Banking 4th ed. Friedman p.12.

442.  § 217.2   Definitions.
For purposes of this part, the following definitions apply unless otherwise specified;

443.  (a) Demand deposit means any deposit that is considered to be a demand deposit under §204.2(b) of the Board's Regulation D—Reserve Requirements of Depository Institutions

444.  (b) Deposit means any liability of a member bank that is considered to be a deposit under §204.2(a) of the Board's Regulation D—Reserve Requirements of Depository Institutions

445.  (d) <u>Interest means any payment to or for the account of any depositor as compensation for the use of funds constituting a deposit.</u> A member bank's ... forbearance from charging a fee in connection with such a service is <u>not</u> considered a payment of interest.

446.  12 CFR  204.2(b)
(b)(1) Demand deposit means a deposit that is payable on demand, or a deposit issued with an original maturity or required notice period of less than seven days, or a <u>deposit representing funds for which the depository institution does not reserve the right to require at least seven days' written notice of an intended withdrawal.</u>  (NOTE: a credit card or loan agreement) .

447.  <u>Count 93:</u>  STATE OF TEXAS ET AL. paid interest on a deposit which is payable on demand
(Fed. Reg Q, 371a.)

448.  STATE OF TEXAS ET AL. used extortion to cause a defaulted legal process, which he collected on several times. (CDS)

449.  STATE OF TEXAS ET AL. covered obscenity <u>by</u> defrauding court & using police force to enforce additional collections.

450.  Banks create money for demand deposits through a combination of the deposit and the credit functions.  When a bank makes loans, they also increase the volume of demand deposits.  Principles of Banking 6th ed. by Francis, Hecht, and Siegel, p45; American Bankers Association, Com. on the American Bar Association;

451.  STATE OF TEXAS ET AL. would need total proof of claim to use these functions; but he has shown no claim.

452.  STATE OF TEXAS ET AL.'s transaction employed a rule-of-78s type of transaction.

453.  It is codified in US 15 Code §1615. Prohibition on use of Rule of 78s.

454.  15 USC § 1615. Prohibition on use of Rule of 78s in connection with...consumer loans

455.  See Exhibit Q, Title 15 Chapter 41  § 1615. Prohibition on use of "Rule of 78's".

456.  STATE OF TEXAS ET AL. is an accessory, or direct participant in a prohibited transaction.

457.  The transaction is called rule of 78s transaction.

458.  It is written in Truth in Lending Act.

28

| | | |
|---|---|---|
| 1548 | 459. | It is codified in US 15 Code §1615. . |
| 1549 | 460. | STATE OF TEXAS ET AL. has an instrument that has been prepaid. |
| 1550 | 461. | STATE OF TEXAS ET AL. therefore, owes any extra amount. |
| 1551 | 462. | If the debt is not validated, it is an infinite amount of interest that needs to be refunded. |
| 1552 | 463. | Reserved. |
| 1553 | 464. | **Count 94:** 1361 violation of Government Contract § 1615, US Code Title 15: STATE OF TEXAS ET AL. took part in a transaction based on a rate calculation of or similar to Rule of 78s. |
| 1557 | 465. | **Count 95:** STATE OF TEXAS ET AL. has not offered the interest back, in violation of § 1615. |
| 1560 | 466. | The United States established these rules to protect every person in the United States. |
| 1562 | 467. | This is true under emergency provisions (BSA, TWEA) and Supreme Court findings. |
| 1564 | 468. | **Jerman v. Carlisle 559 U. S. ____ (The Supreme Court 2010):** S. Rep. 95-382, at 2, reprinted in 1977 U.S.C.C.A.N. 1695, 1696. "Unlike creditors, who generally are restrained by the desire to protect their good will," independent debt collectors "are likely to have no future contact with the consumer and are often unconcerned with the consumer's opinion of them." … Moreover, "[c]ollection agencies generally operate on a 50-percent commission, and this has too often created the incentive to collect by any means." Id. For these reasons, a debt collector faced with a choice between two legal interpretations—one profitable but abusive, and the other less profitable but more scrupulous— has every economic incentive to choose the former. |
| 1574 | 469. | Evidence of Multilateral clearing organization and foreign securities. |
| 1576 | 470. | **Title 12 Chapter 45 § 4421. Definitions… (1) Multilateral clearing organization.** |
| 1578 | 471. | Any agreement on paper is settled. (Congruent with BSA and TWEA.) |
| 1580 | 472. | "Multilateral clearing organization" means a system in which the credit exposures of participants are effectively eliminated and replaced by a system of guarantees… |
| 1583 | 473. | Over-the-counter derivative instrument- The term "over-the-counter derivative instrument" includes **any agreement, contract, or transaction…**(§4421(2) continues in |
| 1586 | 474. | Title 12 Chapter 32 3001(7) "foreign bank" means…a territory of the United States… |
| 1588 | 475. | Foreign security markets, UK, are the reason securities must be classified as foreign. |
| 1590 | 476. | TITLE 12 CHAPTER 32 § 3111. Criminal penalty. Whoever, with the intent to deceive, to gain financially, or to cause financial gain or loss to any person, knowingly violates any provision of this chapter or any regulation or order issued by the appropriate Federal banking agency under this chapter shall be imprisoned not more than 5 years or fined not more than $1,000,000 for each day during which a violation continues, or both.  (NOTE: Pertains to Federal Reserve Regulations) |
| 1597 | 477. | These sections are further evidence of STATE OF TEXAS ET AL.'s interstate and commerce operations. |
| 1599 | 478. | Title 12: Banks and Banking (REGULATION A) § 201.108  Obligations eligible as collateral for advances. (a) … "* * * notes * * * eligible * * * for purchase"…(b) Under section 14(b)…obligations fully guaranteed as to principal and interest by, the United States are eligible for purchase by Reserve Banks… [Reg. A, 33 FR 17231, Nov. 21, 1968, as amended at 34 FR 1113, Jan. 24, 1969; 34 FR 6417, Apr. 12, 1969; 36 FR 8441, May 6, 1971; 37 FR 24105, Nov. 14, 1972; 43 FR 53709, Nov. 17, 1978; 58 FR 68515, Dec. 28, 1993] |

29

479. These are Federal Reserve Regulations and the Board's comments on what paper is.

480. Title 12: Banks and Banking (REGULATION A) § 201.109  Eligibility for discount of mortgage company notes. Comments. (b) Under section 13 of the Federal Reserve Act the Board has authority to define what are "agricultural, industrial, or commercial purposes"… (c) The legislative history of section 13 suggests that Congress intended to make eligible for discount "any paper drawn for a legitimate business purpose of any kind"[4] and that the Board, in determining what paper is eligible, should place a "broad and adaptable construction"[5] upon the terms in section 13. … If "commercial" is broad enough to encompass investment banking, it would also seem to include mortgage banking. (d) In providing for the discount of commercial paper by Reserve Banks, Congress obviously intended to facilitate the current financing of agriculture, industry, and commerce, …[35 FR 527, Jan. 15, 1970, as amended at 58 FR 68515, Dec. 28, 1993]

481. The following, Regulation D tells us all of the things a Deposit is,
(Keeping in mind that it is prohibited to pay interest into a demand deposit account.)

482. Title 12: Banks and Banking (REGULATION D) § 204.2  Definitions…(a)(1) Deposit means: (i) The unpaid balance of money… held by a depository institution…for which it has given or is obligated to give credit, either conditionally or unconditionally, to an account, including interest credited, or which is evidenced by an instrument on which the depository institution is primarily liable; (ii) Money received or held by a depository institution, or the credit given for money or its equivalent received or held by the depository institution in the usual course of business for a special or specific purpose, regardless of the legal relationships established… (iii) An….outstanding draft, certified check, cashier's check, money order, or officer's check drawn on the depository institution, issued in the usual course of business for any purpose, including payment for services, dividends or purchases;(iv) Any due bill or other liability or undertaking on the part of a depository institution to sell or deliver securities to, or purchase securities for the account of, any customer (including another depository institution), involving either the receipt of funds by the depository institution, regardless of the use of the proceeds, or a debit to an account of the customer before the securities are delivered. A deposit arises thereafter, if after three business days from the date of issuance of the obligation, the depository institution does not deliver the securities purchased or does not fully collateralize its obligation with securities similar to the securities purchased…

483. "Most people suppose that a bank lends the deposits of its customers. In fact, however, no bank ever lends its deposits." (Money & Banking, Kamershen 6th p 144) See Ex AAA.

484. Words spoken to one end ought not to be perverted to another. (4 Co. 14.)

485. The United States has a Federal reserve of debts, obligations, known as The Federal Reserve.

486. The Department of the Treasury has a stabilization fund. (31 USC Sec. 5302.)

487. Section 5302. Stabilizing exchange rates and arrangements (a)(1) The Department of the Treasury has a stabilization fund. The fund is available to carry out this section, section 18 of the Bretton Woods… (refer to Bank Secrecy Act)

488. Holder In Due Course/Value & Consideration:

489. UCC § 3-303(a). An instrument is issued or transferred for value if: (1) the instrument is issued or transferred for a promise of performance, to the extent the promise has been performed; (2) the transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceeding;(3) the instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due; (Note: 1929-1933) or (5) the instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.  (b)  "Consideration" means any consideration sufficient to support a simple contract.  The drawer or maker of an instrument has a defense if the instrument is issued without consideration.  If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and

30

| 1663 | | the promise has not been performed. <u>If an instrument is issued for value as stated in</u> |
| 1664 | | <u>subsection (a), the instrument is also issued for consideration.</u> |
| 1665 | | |
| 1666 | 490. | UCC § 4-211. For purposes of determining its status as a holder in due course, a bank has |
| 1667 | | given value to the extent it has a security interest in an item, if the bank otherwise |
| 1668 | | complies with the requirements of § 3-302 on what constitutes a holder in due course. |
| 1669 | 491. | UCC § 3-302. (a) Subject to subsection (c) and Section 3-106(d), "holder in due course" |
| 1670 | | means the holder of an instrument if: (2) the holder took the instrument (ii) in good faith, |
| 1671 | | (iii) without notice that the instrument is overdue or has been dishonored or that there is |
| 1672 | | an uncured default with respect to payment of another instrument issued as part of the |
| 1673 | | same series, |
| 1674 | | |
| 1675 | 492. | UCC §3-302(a)(2)(ii). Holder in Due Course. (a) Subject to subsection (c) and§ 3-106(d). |
| 1676 | | |
| 1677 | 493. | UCC 3-106(d) If a(n)...order at the time it is issued... contains a statement...to the effect |
| 1678 | | that the rights of a holder or transferee are subject to claims or defenses that the issuer |
| 1679 | | could assert against the original payee, the promise or order is not thereby made |
| 1680 | | conditional for the purposes of Section 3-104(a); but if the promise or order is an |
| 1681 | | instrument, there cannot be a holder in due course of the instrument. (Note: warranty) |
| 1682 | | |
| 1683 | 494. | UCC § 3-104(a)..."negotiable instrument" means an unconditional <u>promise</u> or <u>order</u> to |
| 1684 | | pay a fixed amount of money...if it:(1) is payable to bearer or to <u>order</u> at the time it is |
| 1685 | | <u>issued</u> or first comes into possession of a holder;(2) is payable on demand or at a definite |
| 1686 | | time; and (3) does not state any other undertaking or instruction by the person promising |
| 1687 | | or ordering payment to do any act in addition to the payment of money. |
| 1688 | | |
| 1689 | 495. | (UCC) § 3-302(a)(2)(ii). * * *HOLDER IN DUE COURSE..."holder in due course" |
| 1690 | | means the holder of an instrument if: the holder took the instrument in good faith. |
| 1691 | | |
| 1692 | 496. | (UCC) § 3-302(a)(2)(iii). * * *HOLDER IN DUE COURSE..."holder in due course" |
| 1693 | | means ... the holder took the instrument without notice that the instrument is overdue or |
| 1694 | | has been dishonored or that there is an uncured default with respect to payment of |
| 1695 | | another instrument issued as part of the same series... |
| 1696 | 497. | UCC§ 3-302(b)...Public filing or recording of a document does not of itself constitute |
| 1697 | | claim in recoupment, or claim to the instrument. |
| 1698 | | |
| 1699 | 498. | <u>UCC-302(c): Except to the extent a transferor or predecessor in interest has rights as a</u> |
| 1700 | | <u>holder in due course, a person does not acquire rights of a holder in due course of an</u> |
| 1701 | | <u>instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or</u> |
| 1702 | | <u>creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in</u> |
| 1703 | | <u>ordinary course of business of the transferor, or (iii) as the successor in interest to an</u> |
| 1704 | | <u>estate or other organization.</u> |
| 1705 | | |
| 1706 | 499. | UCC § 1-204. Value. Except as otherwise provided in Articles 3, 4, [and] 5, [and 6], a |
| 1707 | | <u>person</u> gives value for rights if the person acquires them: (1) in return for a binding |
| 1708 | | commitment to extend credit or for the extension of immediately available credit, |
| 1709 | | whether or not drawn upon and whether or not a charge-back is provided for in the event |
| 1710 | | of difficulties in collection; (2) as security for, or in total or partial satisfaction of, a |
| 1711 | | preexisting claim; (3) by accepting <u>delivery</u> under a preexisting <u>contract</u> for <u>purchase</u>; or |
| 1712 | | (4) in return for any consideration sufficient to support a simple contract. |
| 1713 | | |
| 1714 | 500. | UCC § 4-103. (a) ...the parties to the agreement cannot disclaim a bank's responsibility |
| 1715 | | for its lack of good faith or failure to exercise ordinary care or limit the measure of |
| 1716 | | damages for the lack or failure... |
| 1717 | 501. | UCC § 4-104(a)(1). "Account" means any deposit or credit account with a bank ... (5) |
| 1718 | | "Customer" means a person having an account with a bank or for whom a bank has |
| 1719 | | agreed to collect items, including a bank that maintains an account at another bank;... |
| 1720 | | (11) "Settle" means to pay... by clearing-house settlement, in a charge or credit or by |
| 1721 | | remittance... (b) (1) "Bank" means a person engaged in the business of banking, |
| 1722 | | including a savings bank, savings and loan association, credit union, or trust company. |

31

| | | |
|---|---|---|
| 1723 | 502. | UCC § 4-213 (a)(1) the medium of settlement is…credit to an account in a Federal |
| 1724 | | Reserve bank of…the person to receive settlement; and (2) the time of settlement, is: (ii) |
| 1725 | | …when the credit is made; (See Federal regulations etc et al…) |

502. UCC § 4-213 (a)(1) the medium of settlement is…credit to an account in a Federal Reserve bank of…the person to receive settlement; and (2) the time of settlement, is: (ii) …when the credit is made; (See Federal regulations etc et al…)

503. **§ 4-215. FINAL PAYMENT OF ITEM BY PAYOR BANK; WHEN PROVISIONAL DEBITS AND CREDITS BECOME FINAL; WHEN CERTAIN CREDITS BECOME AVAILABLE FOR WITHDRAWAL.

    (a) An item is finally paid by a payor bank when the bank has first done any of the following: (1) paid the item in cash; (2) settled…or (3) made a provisional settlement… (d) If a collecting bank receives a settlement for an item which is or becomes final, the bank is accountable to its customer for the amount of the item and any provisional credit given for the item in an account with its customer becomes final. (FDIC, FRB, TLGP)

504. § 8-102. DEFINITIONS. (a) (9) "Financial asset,"…means: (i) a security;.

505. STATE OF TEXAS ET AL. handled a UCC § 8-102(a)(9) (iii) "Financial asset," he says Plaintiff made.

506. STATE OF TEXAS ET AL. handled UCC § 3-104 "Negotiable instrument," he said Plaintiff made.

507. STATE OF TEXAS ET AL. handled a Gramm-Leach-Bliley 206A(a) Bank product.

508. STATE OF TEXAS ET AL. profited from GLB 206A(b) "78c," "swap agreement."

509. STATE OF TEXAS ET AL. violated these provisions.

510. **Title 1361**, impeding, or depredating on a United States contract is an offense.

511. The depredation of each commercial violation is a violation of § 1361.

512. STATE OF TEXAS ET AT; profited by 12 USC 182 Federal Deposit Insurance Corporation Powers on multiple securities.

513. STATE OF TEXAS ET AL. benefitted through A collateralization of 12 USC 1464(c)(A) instruments

514. STATE OF TEXAS ET AL. failed to lawfully give UCC § 3-303 value and consideration.

515. STATE OF TEXAS ET AL. claims to be a UCC § 3-104 holder in due course- but isn't.

516. "…But if the promise or order is an instrument, there cannot be a holder in due course of the instrument. (UCC 3-106(d)"

517. TITLE> PART VI CHAPTER 176> SUBCHAPTER D> § 3303

518. § 3303. Value for transfer or obligation
    (a) **Transaction.**— Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

519. STATE OF TEXAS ET AL. received value already. This is an action for consideration for the Plaintiff.

## FRAUDULENT TRANSFER

520. The above restated, Title 28 Section 3304 applies:

32

| 1779 | 521. | § 3304. Transfer fraudulent as to a debt to the United States |
| 1780 | | |
| 1781 | 522. | (a) **Debt Arising Before Transfer.—** Except as provided in section 3307, a transfer |
| 1782 | | made or obligation incurred by a debtor is fraudulent as to a debt to the United States |
| 1783 | | which arises before the transfer is made or the obligation is incurred if— |
| 1784 | 523. | (1)(A) the debtor makes the transfer or incurs the obligation without receiving a |
| 1785 | | reasonably equivalent value in exchange for the transfer or obligation; and |
| 1786 | | |
| 1787 | 524. | (1)(B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of |
| 1788 | | the transfer or obligation; or |
| 1789 | 525. | (2)(A) the transfer was made to an insider for an antecedent debt, the debtor was |
| 1790 | | insolvent at the time; and |
| 1791 | | |
| 1792 | 526. | (2)(B) the insider had reasonable cause to believe that the debtor was insolvent. |
| 1793 | | |
| 1794 | 527. | STATE OF TEXAS ET AL. has not produced any good evidence of ownership. |
| 1795 | | (restated) |
| 1796 | 528. | STATE OF TEXAS ET AL. conspired to commit felony offenses with others he knew |
| 1797 | | doing the same. |
| 1798 | 529. | The misrepresentations of being the 3-104 Holder in Due Course, expose more violations. |
| 1799 | 530. | STATE OF TEXAS ET AL. ensued in extorted threats and abusive process to cover his |
| 1800 | | fraud. |
| 1801 | 531. | Fraud includes that STATE OF TEXAS ET AL. got Assets from Plaintiff besides merely |
| 1802 | | interstate bank funds. |
| 1803 | 532. | STATE OF TEXAS ET AL. got foreign commerce assets from the Plaintiff as well, |
| 1804 | | which he converted |
| 1805 | | |
| 1806 | 533. | "A bank that makes a loan, monetizes a private debt by accepting as an asset the debt |
| 1807 | | obligation of the borrower- that is, the borrowers promise to repay. The bank |
| 1808 | | simultaneously creates a liability on its books in the form of a demand deposit balance in |
| 1809 | | the amount of the loan." (Money & Banking 4th ed. Friedman p36 published by American |
| 1810 | | Bankers Association, adopted by the Committee of the American Bar Association. |
| 1811 | 534. | (TWEA reference) A reason for "civil" (court) war power |
| 1812 | 535. | See legal dictionary for Definition of Banking Product, Definition of Swap. (GLB 1999). |
| 1813 | | |
| 1814 | 536. | 12 U.S.C. 1811 (a) the term "identified banking product" means— (1) a deposit account, |
| 1815 | | savings account, certificate of deposit, or other deposit instrument issued by a bank; (2) a |
| 1816 | | banker's acceptance; (3) a letter of credit issued or loan made by a bank; (4) a debit |
| 1817 | | account at a bank arising from a credit card or similar arrangement; |
| 1818 | | |
| 1819 | 537. | To further understand more clearly, about the value of assets gained by STATE OF |
| 1820 | | TEXAS ET AL., read this: |
| 1821 | | |
| 1822 | 538. | In making the loan to Mr. Jones, the bank did not reduce anyone's previous bank balance. |
| 1823 | | It simply credited the Jones account with $50. The total amount helped in bank demand |
| 1824 | | deposits now become $150. The bank has, therefore, issued $50 in "checkbook money." |
| 1825 | | The natural question to ask is, where does the bank get the additional $50 to issue and |
| 1826 | | lend Mr. Jones? The answer, as will become clear in the next chapter, is that the bank did |
| 1827 | | not "get" the money at all. *Money has been created.* Of course, the bank's power to |
| 1828 | | create money is limited. And a later chapter will show that the Federal Reserve sets the |
| 1829 | | limit of this power to create money. (A Primer on Money, 88th Congress 2d Session, |
| 1830 | | August 8, 1964, p19-20. |
| 1831 | | |
| 1832 | 539. | The following is necessary to show the gains of a "credit-default-swap" and "swaps." |
| 1833 | | |
| 1834 | 540. | 3 GRAMM-LEACH-BLILEY ACT Sec. 206A (b) DEFINITION OF SWAP |

33

AGREEMENT.—For purposes of subsection (a)(6), the term "swap agreement" means any individually negotiated contract, agreement, warrant, note, or option that is based, in whole or in part, on the value of, any interest in, or any quantitative measure or the occurrence of any event relating to, one or more commodities, securities, currencies, interest or other rates, indices, or other assets…

541. SEC. 206A. 15 U.S.C. 78c note; SWAP AGREEMENT. (a) IN GENERAL.—…the term "swap agreement" means <u>any</u> agreement, <u>contract</u>, or transaction between eligible contract participants . …(3)<u>…</u>any such agreement, contract, or transaction commonly known as an interest rate swap, including a… credit default swap, credit swap, weather swap, or commodity swap;

542. <u>15 USC §78g</u> (2) For the purposes of this subsection – (A) The term "United States person" includes a person which is organized or exists under the laws of any State or,… a citizen or resident of the United States; a domestic estate; or a trust in which one or more of the foregoing persons has a cumulative direct or indirect beneficial interest in excess of 50 per centum of the value of the trust…. (C) The term "<u>foreign person controlled by a United States person</u>" includes any noncorporate entity in which United States persons directly or indirectly have more than a 50 per centum beneficial interest, and any corporation in which one or more United States persons, directly or indirectly, own stock possessing more than 50 per centum of the total combined voting power of all classes of stock entitled to vote, or more than 50 per centum of the total value of shares of all classes of stock.

543. STATE OF TEXAS ET AL. and associates profited from credit-default-swaps on the Plaintiff.

544. When a party harasses another party to cause a default, that is a way of stealing credit.

545. Plaintiff is a JURIDICAL United States Person as defined here. Legal Personality §78g.

546. The Legal Personality is also a 18 USC § 666(d)(2) classified United States legal entity.

547. Plaintiff is a foreign person controlled by a United States Person, as <u>specifically</u> defined here. (for Federal Reserve purposes (Cede & Co.)) (15 USC §78g(2)(C))

548. The foreign status is generally used for clearing restricted pay-to-any-bank securities.

549. A debt instrument in which the Plaintiff is maker of, is a <u>United States Security</u>.

550. Debt instruments by Foreign Persons are Foreign Securities. (15 USC §78g(2)(C))

551. Cede, a UK clearing-company trades with enemies & allies of enemies, of United States.

552. <u>15 USC §78g</u> (f)(1): It is unlawful… to… enjoy the beneficial use of a(n)… extension of credit… for the purpose of (A) purchasing or carrying United States securities… if…the loan or other credit transaction… would be prohibited if it had been <u>made</u> or the transaction had otherwise occurred in a lender's office or other place of business in a State.

553. <u>**Count 96:**</u> STATE OF TEXAS ET AL. enjoyed the beneficial use of Plaintiff's extension of credit for the purpose of carrying United States securities. (FDIC Obligations) 15 USC §78g(f)(2)(c) Rule 78g

554. 15 USC §78g(f)(2)(c) Rule 78g applies to the following counts as well.

555. *Acts required by law to be done, admit of no qualification. Hob. 153.*

556. STATE OF TEXAS ET AL. borrowed an extension of Plaintiff's credit.

557. <u>**Count 97:**</u> STATE OF TEXAS ET AL. used Plaintiff's credit for his own gain.

558. <u>**Count 98:**</u> STATE OF TEXAS ET AL. enjoyed beneficial use of said property.

34

| | | |
|---|---|---|
| 1896<br>1897<br>1898 | 559. | **Count 99:** STATE OF TEXAS ET AL. purchased securities of the plaintiff, with the credit of plaintiff. |
| 1899<br>1900 | 560. | **Count 100:** STATE OF TEXAS ET AL. was also accessory to the same. |
| 1901<br>1902<br>1903<br>1904<br>1905<br>1906<br>1907<br>1908<br>1909<br>1910<br>1911<br>1912 | 561. | **KLEIN, KASTNER v. BOYD et al 3rd Circuit**. 97-1143; 1261 Brief of the Securities Exchange Commission Amicus Curiae.: II. A PERSON SHOULD BE LIABLE AS A PRIMARY VIOLATOR OF THE SECURITIES LAWS WHEN HE OR SHE, ACTING ALONE OR WITH OTHERS, CREATES A <u>MISREPRESENTATION</u>. As the Supreme Court stated in Central Bank, "[i]n any complex securities fraud * * * there are likely to be multiple [primary] violators." See 511 U.S. at 191. Moreover, it would not be necessary for a person to be the initiator of a misrepresentation in order to be a primary violator. Provided that a plaintiff can plead and prove scienter, a person can be a primary violator if he or she writes misrepresentations for <u>inclusion in a document</u> to be given to investors (the Federal Reserve), <u>even if the idea for those misrepresentations came from someone else.</u> |
| 1913<br>1914 | 562. | *No example is the same for all purposes.* |
| 1915 | 563. | STATE OF TEXAS ET AL.'s price discrimination is on the commodity known as credit. |
| 1916 | 564. | Both parties are classified as a financial institution, in capitalistic economy. |
| 1917 | 565. | Both parties are makers of foreign securities and interstate securities. |
| 1918 | 566. | Discrimination also relates to opportunities such as credit default swaps. |
| 1919 | 567. | Plaintiff restates all allegations and demands judgment for the Plaintiff. |
| 1920<br>1921<br>1922 | 568. | STATE OF TEXAS ET AL. effected discrimination to injure competition with the Plaintiff, and STATE OF TEXAS ET AL. received benefits. |
| 1923<br>1924<br>1925 | 569. | STATE OF TEXAS ET AL. destroyed competition with the Plaintiff, and STATE OF TEXAS ET AT; received benefits. |
| 1926<br>1927<br>1928 | 570. | STATE OF TEXAS ET AL. induced a discrimination price. (credit default swap) (accessory) |
| 1929<br>1930 | 571. | STATE OF TEXAS ET AL. knowingly received a discrimination in price. (CDS) |
| 1931<br>1932<br>1933 | 572. | 15 USC § 13 (a) It shall be unlawful to effect discrimination to injure competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them… |
| 1934<br>1935<br>1936<br>1937 | 573. | 15 USC § 13 (a) It shall be unlawful to destroy competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them… |
| 1938<br>1939 | 574. | *"He who destroys the means, destroys the end."* |
| 1940<br>1941 | 575. | 15 USC 13(f) It shall be unlawful…knowingly to induce … a discrimination in price… |
| 1942<br>1943 | 576. | 15 USC 13 (f) It shall be unlawful…knowingly to …receive a discrimination in price… |
| 1944<br>1945 | 577. | **Count 101:** Effecting discrimination to injure competition while, receiving benefits. |
| 1946<br>1947 | 578. | **Count 102:** Destroying competition and receiving benefits of said destruction. |
| 1948<br>1949 | 579. | **Count 103:** Inducing a discrimination of price. (credit default swap) (accessory) |
| 1950<br>1951 | 580. | **Count 104:** Received a discrimination in price, knowingly. (CDS) |

35

| | | |
|---|---|---|
| 1952 | 581. | In other words, other parties were permitted to settle a contract for less and receive full |
| 1953 | | compensation, and other benefits, but Plaintiff was denied that by STATE OF TEXAS |
| 1954 | | ET AT;. |
| 1955 | | |
| 1956 | 582. | Private agreements cannot derogate from public law. Dig. 50, 17, 45, 1. |

## **INVASION OF PRIVACY**

| | | |
|---|---|---|
| 1957 | | |
| 1958 | | |
| 1959 | 583. | TITLE 15 Commerce and Trade, CHAPTER 94 Privacy, SUBCHAPTER II § 6821. |
| 1960 | 584. | Privacy protection for customer information of financial institutions. (a) Prohibition on |
| 1961 | | obtaining customer information by false pretenses. It shall be a violation of this |
| 1962 | | subchapter for any person to obtain or attempt to obtain, or cause to be disclosed or |
| 1963 | | attempt to cause to be disclosed to any person, customer information of a financial |
| 1964 | | institution relating to another person— |
| 1965 | 585. | STATE OF TEXAS ET AL. obtained customer information of financial institution |
| 1966 | | relating to Plaintiff. (§6821(a)) |
| 1967 | | |
| 1968 | 586. | STATE OF TEXAS ET AL. obtained customer information by false pretenses. (15 USC§ |
| 1969 | | 6821(a)(1)) |
| 1970 | | |
| 1971 | 587. | STATE OF TEXAS ET AL. made a fraudulent statement to officers, employees, and |
| 1972 | | agents of a financial |
| 1973 | | institution; |
| 1974 | | |
| 1975 | 588. | STATE OF TEXAS ET AL. made false representation to an officer, employee, or agent |
| 1976 | | of a financial institution; |
| 1977 | | |
| 1978 | 589. | STATE OF TEXAS ET AL.'s false statements are in regards to the account of the |
| 1979 | | Plaintiff. |
| 1980 | | |
| 1981 | 590. | STATE OF TEXAS ET AL. provided documentation to a financial institution knowing |
| 1982 | | that the document was fraudulently obtained, and contained a false representation. (15 |
| 1983 | | USC§ 6821(a)(3)) |
| 1984 | | |
| 1985 | 591. | STATE OF TEXAS ET AL. obtained customer information from financial institution |
| 1986 | | under false pretenses.(a)3b. |
| 1987 | | |
| 1988 | 592. | (1) by making a false, fictitious, or fraudulent statement or representation to an officer, |
| 1989 | | employee, or agent of a financial institution; |
| 1990 | | |
| 1991 | 593. | (2) by making a false, fictitious, or fraudulent statement or representation to a customer |
| 1992 | | of a financial institution; or |
| 1993 | | |
| 1994 | 594. | (3) by providing any document to an officer, employee, or agent of a financial institution, |
| 1995 | | knowing that the document is forged, counterfeit, lost, or stolen, was fraudulently |
| 1996 | | obtained, or contains a false, fictitious, or fraudulent statement or representation. |
| 1997 | | (b) Prohibition on solicitation of a person to obtain customer information from financial |
| 1998 | | institution under false pretenses |
| 1999 | 595. | It shall be a violation of this subchapter to request a person to obtain customer |
| 2000 | | information of a financial institution, knowing that the person will obtain, or attempt to |
| 2001 | | obtain, the information from the institution in any manner described in subsection (a) of |
| 2002 | | this section. |
| 2003 | 596. | Please see Pretexting, Money Laundering, and Patriot Act. US statutes. |
| 2004 | 597. | Federal Trade Commission enforces the prohibition of Pretexting. |
| 2005 | 598. | **F.T.C. v. Check Investors, Inc., 502 F.3d 159 (3rd Cir. 2007)** Section 5(a) of the FTC |
| 2006 | | Act, 15 U.S.C. § 45(a), prohibits, inter alia, "unfair or deceptive acts or practices in or |
| 2007 | | affecting commerce." Section 13(b), 15 U.S.C. § 53(b), provides that "in proper cases |
| 2008 | | the Commission may seek, and after proper proof, the [district] court may issue, a |

36

| | | |
|---|---|---|
| 2009 | | permanent injunction." "The deceptive acts or practices forbidden by the [FTC] Act |
| 2010 | | include those used in the collection of debts." Trans World Accounts, Inc. v. FTC, 594 |
| 2011 | | F.2d 212, 214 (9th Cir.1979). |
| 2012 | 599. | Money Laundering is that which disguises the true nature of funds.. |
| 2013 | 600. | The Patriot Act §363 increased penalties on money laundering. |
| 2014 | 601. | Obama extended emergency war powers in September 2010. |
| 2015 | 602. | This following, refers to documents STATE OF TEXAS ET AT; produced as evidence of |
| 2016 | | his claim. |
| 2017 | 603. | Plaintiff seeks disclosure from Defendant evidence of a claim, to add counts. |
| 2018 | | |
| 2019 | 604. | § 1028. Fraud and related activity in connection with identification documents… |
| 2020 | | |
| 2021 | 605. | STATE OF TEXAS ET AL. knowingly, without lawful authority produced an |
| 2022 | | identification document. |
| 2023 | 606. | **Count 105:** Knowingly producing a false identification document; (§1028(a)(1)). |
| 2024 | 607. | STATE OF TEXAS ET AL. knowingly possessed an identification document, intent to |
| 2025 | | defraud United States. |
| 2026 | 608. | **Count 106:** possessing false-identification document intent to defraud United |
| 2027 | | States.§1028(4)). |
| 2028 | | |
| 2029 | 609. | The aforementioned is in connection with unlawful activity, violation & felony.§1028(7) |
| 2030 | | |
| 2031 | 610. | STATE OF TEXAS ET AL. conspired, without lawful authority produce an |
| 2032 | | identification document. |
| 2033 | | |
| 2034 | 611. | **Count 107:** conspiring to produce a false identification document; (§1028(a)(1)). |
| 2035 | | |
| 2036 | 612. | STATE OF TEXAS ET AL. conspired to knowingly transferred an identification |
| 2037 | | document, knowing that such document was produced without lawful authority; (18 USC |
| 2038 | | § 1028(2)) |
| 2039 | | |
| 2040 | 613. | Following relates to 18 USC § 1028A. Aggravated identity theft. |
| 2041 | 614. | He knowingly transferred, without lawful authority, a means of identification of Plaintiff. |
| 2042 | | |
| 2043 | 615. | Transfer of said materials, were in relation to STATE OF TEXAS ET AL.'s felony |
| 2044 | | violations. (1028A.(a)(1)). |
| 2045 | | |
| 2046 | 616. | STATE OF TEXAS ET AL. transferred said materials in relation to STATE OF TEXAS |
| 2047 | | ET AL.'s alleged felony violations. |
| 2048 | | |
| 2049 | 617. | Refer to § 2332b (g)(5)(B). (18 USC 1361) (18 USC § 1028A.(a)(2) |
| 2050 | | |
| 2051 | 618. | Aggravated identity theft occurs when other torts also happen in connection with it. |
| 2052 | | See US statutes for more on 1028A, and the Patriot Act and related congressional |
| 2053 | | remedies. |
| 2054 | | |
| 2055 | 619. | 18 USC § 1028A. Aggravated identity theft…(c) means any offense that is a felony |
| 2056 | | violation of— (1) section 641 (relating to theft of public money, property, or rewards), |
| 2057 | | section 656 (relating to theft, embezzlement, or misapplication by bank officer or |
| 2058 | | employee)… (5) any provision contained in chapter 63 (relating to mail, bank, and wire |
| 2059 | | fraud); (8) **section 523 of the Gramm-Leach-Bliley Act (15 U.S.C. 6823) (relating to** |
| 2060 | | **obtaining customer information by false pretenses);** |
| 2061 | | |
| 2062 | 620. | **Count 108:** Aggravated Identity Theft as stated above and throughout this complaint. |
| 2063 | | |
| 2064 | 621. | **Economic Warfare: Risks and Responses Analysis of Twenty-First Century Risks in** |

37

**Light of the Recent Market Collapse,** Kevin D. Freeman, CFA, Cross Consulting and Services, LLC, Originally published June 2009, *The report was originally published under contractual arrangement with a sub-contractor of the* **Department of Defense Irregular Warfare Support Program (IWSP)** *per contractual arrangement between the sub-contractor and Cross Consulting and Services, LLC*... [Through the acts of 1994 and 2008,] JP Morgan Chase (and others named in the report) …created a system-wide crisis, caused the collapse of the credit markets, and nearly collapsed the global financial system. The bear raids were perpetrated by …manipulation of credit default swaps, both of which were virtually unregulated. **…This may be as significant as the Japanese radio intercepts were before December 1941. Immediate consideration of the issues outlined in this report is vital**…Warren Buffett described the initial market decline as an —Economic Pearl Harbor…. **This paper…is tantamount to fighting the last war. Preparation must be made now…** The concern of market manipulation was so great in the 1930s that it provided the genesis for the creation of the Securities Exchange Commission and the appointment of its first chairman, Joseph Kennedy…. *Up until the crash of 2008, the prevailing (academic) view – called the efficient market – was that the prices of financial instruments accurately reflect all the available information (i.e. the underlying reality). But this is not true*…**The Emergence of Credit Default Swaps.** There should be no question that Credit Default Swaps (CDS) played an integral role in the 2008 collapse. The fact that the CDS market reached $62 trillion in notional value at the end of 2007 (nearly five times U.S. annual GDP) according to the ISDA (International Swaps and Derivative Association, www.isda.org)… made the overall system very vulnerable to manipulation. ☐ Credit Default Swaps are derivative instruments of the type that Warren Buffett once described (Berkshire Hathaway 2002 Letter to Shareholders) as —**financial weapons of mass destruction carrying dangers that, while now latent, are potentially lethal**…What makes Credit Default Swaps so significant is that they have the power to determine the financial viability …**CONCLUSIONS.** There is no question that the collapse of Lehman Brothers triggered the economic heart attack that began on or around 9/11/2008….5. **Recognize that many Wall Street and DC-based experts may have inherent conflicts of interest due to connections with hedge funds or others that may have been complicit in market attacks. Likewise, existing regulators who long overlooked problems may not be the best candidates for addressing the problems. Finally, traditional defense and intelligence agencies may not have the economic expertise to analyze or address the complexities of this situation. Therefore, due to the magnitude and seriousness of the risks, these efforts are best served outside traditional agencies and departments.** [This follows the historical precedent from the inception of intelligence agencies in the late 1930s based on concerns of Nazi infiltration at the initial stages of World War II.]…

## **UNJUST ENRICHMENT**

"No one ought to enrich himself at the expense of others."

622.  The Plaintiff alleges the following:

623.  STATE OF TEXAS ET AL. infers that he is an officer of an agency of the state, and uses this inference for unlawful benefit.18 USC § 666.

624.  STATE OF TEXAS ET AL. is an agent of FDIC related business. 18 USC § 666.

625.  Said agencies receive benefits of over $10,000 in a federal program.

626.  STATE OF TEXAS ET AL. attempted to obtain property by fraud. 18 USC § 666.

627.  The property was entrusted to FDIC, and its assigns, Cede and Company.

628.  STATE OF TEXAS ET AL. used stolen property to steal more property. (interstate) 18 USC § 666.

629.  STATE OF TEXAS ET AL. knowingly misapplied property (Credit) of the plaintiff. 18 USC § 666.

38

| | | |
|---|---|---|
| 630. | The property was in the care of FDIC Federal member banks. 18 USC § 666. |

631.  STATE OF TEXAS ET AL. infers that he is a licensed officer of the court who normally transacts FDIC related business. ST

632.  FDIC's self-stated main 4th purpose it to sue and be sued.

633.  See 18 USC § 666, Stealing from an organization, state or government.

634.  See United State Attorneys Manual § Scope of 18 USC §666.

635.  666 (d)(2) also applies to the classification of Plaintiff's legal identity purpose in the government.

636.  STATE OF TEXAS ET AL. with intent defrauded FDIC, and The Plaintiff. STATE OF TEXAS ET AT; possessed false writing for the purposes of enabling the Sheriff to obtain money from the Plaintiff, a 666(d)(2) United States legal entity. See also 28 USC 3303 et seq.

637.  § 1002. Possession of false papers to defraud United States

638.  Whoever, knowingly and with intent to defraud the United States, or any agency thereof, possesses any false, altered, forged, or counterfeited writing or document for the purpose of enabling another to obtain from the United States, or from any agency, officer or agent thereof, any sum of money, shall be fined under this title or imprisoned not more than five years, or both.

639.  **Count 109:** STATE OF TEXAS ET AL. violated §1002, False Papers to defraud the United States.

640.  18 USC 513: For purposes of this section— (1) the term "counterfeited" means a document ... has been falsely made...;

(2) the term "forged" means a document...has been falsely... endorsed, or contains a false addition thereto or insertion therein, or is a combination of parts of two or more genuine documents;

(3) the term "security" means— (A) a note,...bond,...debenture,...certificate of deposit, interest coupon, bill, check, draft, warrant, debit instrument... warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest in or participation in any profit-sharing agreement, collateral-trust certificate… transferable share, investment contract,… or certificate of interest in tangible or intangible property;

641.  A security is an "evidence of indebtedness", any "obligation" or interest therein.

642.  Defendant STATE OF TEXAS ET AL. made counterfeit securities from said claim. (GLB 206A, 206B).

643.  STATE OF TEXAS ET AL. made a counterfeit security. 18 USC 513(c)(3)(A).

644.  These actions were done with STATE OF TEXAS ET AL.'s intent to defraud. (Credit Default Swap GLB).

644B.  **"Appendix A: Understanding the Risks of Credit Default Swaps.** Credit default swaps were created by JP Morgan in 1994. There primary purpose is to provide a mechanism whereby bond investors could insure their loans against default. This allowed the lender to free up capital reserves that would normally be maintained in case any loans went bad. Those seeking to insure their loans would buy the swaps, in essence paying a fee to another party in exchange for a promise to be compensated in the event of a default. The counter-party that sold the swaps was essentially insuring against default and receiving a premium. As with most forms of insurance, the greater the risk of default, the higher the premium charged…The lack of regulation created the second complication in that it became possible to essentially buy insurance without an underlying interest in what was being insured. Bucket shop laws were introduced after the 1907 financial crisis to prohibit betting on securities without some stake in the underlying asset for good reason.

39

Imagine the problems that would be created if it were possible to buy fire insurance on buildings other than by the owners. Laws prohibit this specifically to prevent a financial incentive for arson. Likewise, laws prevent the taking out of life insurance policies by individuals without relation to the one insured. This prevents the creation of financial incentive to murder. Yet, with credit default swaps it has been possible to profit from the default of a company without any interest or risk in the underlying firm... *It is like buying life insurance on someone else"s life and owning a license to kill him.* CDS are instruments of destruction that ought to be outlawed.'1148 The third complicating factor is that an underlined amount of swaps could be written and bought on any issuer. In some cases, the notional value of outstanding CDS contracts was as many as 10 times the value of the debt being insured. Because these are private contracts, sellers of swaps might also be buyers to reduce their risk in default. As a result an entire chain of buyers and sellers is established, creating a potential chain reaction through the industry in the event of default. Due to the lack of transparency, it also becomes virtually impossible to know who owns what until or unless the swaps settle. Even then, because they are private transactions there is very little publicly available information on the settlement. There is even less available regarding who may have Economic Warfare: Risks and traded the instruments between origination and settlement. Just imagine if a $300,000 home would be worth $3 million to strangers around the globe in the event of a fire. That's essentially the situation with CDS. □ The fourth complication is that the risk/reward of credit default swaps is asymmetrical. What this means is that the cost of a CDS is limited to its purchase price but the payout in the event of default is substantially greater. Since it is possible to insure the same debt multiple times its actual value, the profit potential in the case of default becomes virtually unlimited. On the other hand, the seller of CDS provides limited profit but virtually unlimited risks. This encourages speculation to support default. ...The most insidious aspect of credit default swaps is that they are essentially self-fulfilling prophesies. The mechanism is simple. Strong buying interest is reflected in higher prices. In other words, the more demand there is for insurance, the higher the premiums. In turn, higher premiums suggest to the market that there must be a greater risk of default. Without ownership transparency, it becomes impossible to determine if the higher premiums are because of additional buying or greater risk. As a result, the market must conclude that the risk of default rose, which in turn leads to even higher CDS prices..." **Economic Warfare: Risks and Responses Analysis of Twenty-First Century Risks in Light of the Recent Market Collapse**, Kevin D. Freeman, CFA, Cross Consulting and Services, LLC, Originally published June 2009, *The report was originally published under contractual arrangement with a* sub-contractor of the **Department of Defense Irregular Warfare Support Program (IWSP)**.

645. **Count 110:** Making a forged security, an evidence of indebtedness. 18 USC 513(c)(3)(A).

646. STATE OF TEXAS ET AL. with intent to defraud, printed a fictitious obligation of debt.

647. **Count 111:** Prints fictitious obligations with intent to defraud. 18 USC § 514 (a).

648. STATE OF TEXAS ET AL. with intent to defraud, processed fictitious obligation of debt.

649. **Count 112:** possessing fictitious obligation of debt, with intent to defraud. 18, § 514 (a).

650. STATE OF TEXAS ET AL. with intent to defraud, made a fictitious obligation of debt.

651. **Count 113:** Making a fictitious obligation of debt, with intent to defraud (18 § 514 (a)).

652. STATE OF TEXAS ET AL. with the intent to defraud passed a false item appearing to be an actual security.

653. **Count 114:** Passing false item appearing to be actual security, intending to defraud.

654. STATE OF TEXAS ET AL. offered a false instrument purporting, to be an actual security-financial-instrument.

40

655.    **Count 115:** Offering a false instrument, purporting, to be an actual security.

656.    STATE OF TEXAS ET AL. with intent to defraud, issued a fictitious item, purporting to be an actual
        security. § 514 (a)

657.    **Count 116:** Issuing a fictitious item, purporting to be an actual security. 18 USC § 514(a)

658.    STATE OF TEXAS ET AL. with the intent to defraud, utilized the use of the mails.

659.    STATE OF TEXAS ET AL. moved false document appearing to be an actual financial instrument.

660.    **Count 117:** utilizing the mails, with intent to defraud… false document. (18 USC 514(a))

661.    STATE OF TEXAS ET AL. utilized electronic communication to transmit a fictitious-financial-instrument.

662.    **Count 118:** Utilizing the use of electronic communication with intent to defraud. § 514(a).

663.    STATE OF TEXAS ET AL. with the intent to defraud, utilized interstate commerce.

664.    STATE OF TEXAS ET AL. with intent to defraud, caused others to do the same.

665.    **Count 119:** With intent to defraud, causing others to defraud. 18 USC 514 (a).

666.    **Count 120:** Utilizing interstate commerce, with the intent to defraud. 18 USC 514 (a).

667.    STATE OF TEXAS ET AL. with the intent to defraud utilized, foreign commerce.

668.    **Count 121:** Whoever, with the intent to defraud utilizes foreign commerce. 18 USC 514.

### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

669.    Plaintiff restates all allegations and demands judgment for the Plaintiff.

670.    **F.T.C. v. Check Investors, Inc., 502 F.3d 159 (3rd Cir. 2007).** Id. Congress
        also recognized that "[a]busive debt collection practices contribute to the number
        of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions
        of individual privacy." 15 U.S.C. § 1692a. Thus, Congress concluded that
        "[t]he issue is not one of uncollected debts, but rather whether or not consumers
        must lose their civil rights and be <u>terrorized</u> and abused by unethical debt
        collectors." H.R.Rep. No. 95-131, at 3 (1977).

671.    STATE OF TEXAS ET AL. did provide a real feeling of terrorism to the Plaintiff.

672.    Here is evidence of "mischief" being a characterization of foul collection activities.

673.    **Miller v. Javitch, Block and Rathbone, 561 F.3d 588 (6th Cir. 2009):** See also
        Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 95 (2d Cir.2008) (noting that the
        "mischief" the FDCPA was "designed to address" is that of debt-collectors, and
        "the Act is primarily a consumer protection statute" and reversing the grant of
        summary judgment in the district-court decision relied on and quoted at length by
        the majority).

674     Malicious Mischief: STATE OF TEXAS ET AL. depredated government contracts which
        damaged plaintiff.

675.    Title 18 § 1361. Government property or contracts

676.    Whoever willfully injures or commits any depredation against any property of the United
        States, or of any department or agency thereof, or any property which has been or is

41

| | | |
|---|---|---|
| 2298 | | being manufactured or constructed for the United States, or any department or agency |
| 2299 | | thereof, or attempts to commit any of the foregoing offenses, shall be punished … |
| 2300 | 677. | Merriam Webster: depredation: transitive verb : to lay waste : plunder, ravage |
| 2301 | | intransitive verb : to engage in plunder— depredation  \ˌde-prə-ˈdā-shən\ noun |
| 2302 | 678. | STATE OF TEXAS ET AL.'s depredation of government property and contracts: |
| 2303 | | |
| 2304 | 679. | Fair Debt Collection Practices Act of 1978, Fair Credit Reporting Act 1970, Gramm- |
| 2305 | | Leach-Bliley Act of 1999, The Financial Crimes Prevention Act of 1996, The Emergency |
| 2306 | | Banking Act Of 1933, The Securities Act Of 1933, The Securities Act of 1934, The |
| 2307 | | Federal Deposit Insurance Act 1933, Federal Reserve Act of 1913, Federal Reserve |
| 2308 | | Regulations, The Bank Secrecy Act of 1970, The National Banking Act of 1865 as |
| 2309 | | ratified in Title 12, The Ku Klux Klan Act of 1871, The Trading With The Enemy Act |
| 2310 | | 1917, The Travel Act of 1961, The Mail Fraud Act of 1871 and 1872, The Bank Holding |
| 2311 | | Company Act of 1956,  The Identity Theft Protection Act of 2007, Racketeering and |
| 2312 | | Corrupt Organizations, The Uniting and Strengthening America By Providing |
| 2313 | | Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, The |
| 2314 | | Clayton Act of 1914, The Sherman Act of 1890, The Robinson-Patman Act of 1936, The |
| 2315 | | Trafficking In Persons Act of 2000, Dodd-Frank Act 2010, Federal Trade Commission |
| 2316 | | Act, Truth in Lending Act, and, of course all amendments since time of first execution. |
| 2317 | 680. | See Exhibit T for 18 USC § 891 definitions pertaining to extortionate credit. |
| 2318 | 681. | § 891. Definitions and rules of construction…(5) To collect an extension of credit means |
| 2319 | | to induce in any way any person to make repayment thereof. (6) An extortionate |
| 2320 | | extension of credit is any extension of credit with respect to which it is the understanding |
| 2321 | | of the creditor and the debtor at the time it is made that delay in making repayment or |
| 2322 | | failure to make repayment could result in the use of violence or other criminal means to |
| 2323 | | cause harm to the person, reputation, or property of any person. (7) An extortionate |
| 2324 | | means is any means which involves the use, or an express or implicit threat of use, of |
| 2325 | | violence or other criminal means to cause harm to the person, reputation, or property of |
| 2326 | | any person. |
| 2327 | 682. | TITLE 18  PART I  CHAPTER 42  § 892. Making extortionate extensions of credit. |
| 2328 | 683. | STATE OF TEXAS ET AL. made an extortionate extension of credit. |
| 2329 | 684. | STATE OF TEXAS ET AL. conspired, to make an extortionate extension of credit. |
| 2330 | 685. | STATE OF TEXAS ET AL. was known to use extortionate means to collect or to punish |
| 2331 | | non-payment thereof. |
| 2332 | 686. | Upon the making of the extension of credit, the total of the extensions of credit by the |
| 2333 | | creditor to the debtor then outstanding, including any unpaid interest or similar charges, |
| 2334 | | exceeded $100. (18 USC § 892. extortionate extension of credit) |
| 2335 | | |
| 2336 | 687. | STATE OF TEXAS ET AL. willfully advanced property to a person (a GLB § 206B |
| 2337 | | security), with the intention to use property for the purpose of making extortionate |
| 2338 | | extensions of credit. (18 USC §893, Financing extortionate extensions of credit) |
| 2339 | 688. | TITLE 18 PART I  CHAPTER 42 > § 894. (a) "use of extortionate means) |
| 2340 | 689. | STATE OF TEXAS ET AL. knowingly also participated indirectly, and conspired to do |
| 2341 | | so, in the use of extortionate means for the following: |
| 2342 | | |
| 2343 | 690. | (1) to collect or attempt to collect any extension of credit, or |
| 2344 | | |
| 2345 | 691. | (2) to punish any person for the nonrepayment thereof, shall be fined under this title or |
| 2346 | | imprisoned not more than 20 years, or both. |
| 2347 | | |
| 2348 | 692. | See Exhibit U, for (c) and (d) of § 894. |
| 2349 | | See TVPA Section Forced Labor 18 USC 1589, in this complaint. |
| 2350 | | |
| 2351 | 693. | STATE OF TEXAS ET AL. associates with persons who have a reputation of extortion. |

42

| | | |
|---|---|---|

2352

694. STATE OF TEXAS ET AL. conspired to defraud the United States, FDI Corporation operating under the FDI ACT. (18 USC 371 Conspiracy)

695. STATE OF TEXAS ET AL. within the special maritime and territorial jurisdiction of the United States,
by intimidation, took from plaintiff things of value…18 USC Robbery & Burglary
§ 2111.

696. STATE OF TEXAS ET AL. robbed or attempted to rob personal property belonging to the United States (FDIC Funds, FRB Funds, Federal Funds.) 18 USC Ch 103 § 2112) § 2113 (a)

697. STATE OF TEXAS ET AL. by intimidation, attempted to obtained, money, in the care of a bank. 18 USC § 2113(b)

698. STATE OF TEXAS ET AL. attempted to obtain, by extortion, money, in the care of a bank. § 2113(b).

701. (f) As used in this section the term "bank" means any member bank of the Federal Reserve System, and any bank…and any institution the deposits of which are insured by the Federal Deposit Insurance Corporation.

702. (h) As used in this section, the term "savings and loan association" means—

703. (1) a Federal savings association or State savings association (as defined in section 3(b) of the Federal Deposit Insurance Act (12 U.S.C. 1813 (b))) having accounts insured by the Federal Deposit Insurance Corporation; (NOTE applies to all demand deposit accounts + more.)

704. (2) a corporation described in section 3(b)(1)(C) of the Federal Deposit Insurance Act (12 U.S.C. 1813 (b)(1)(C)) that is operating under the laws of the United States.

705. Plaintiff restates all allegations and demands judgment for the Plaintiff.

**713.** **Pacific Mutual Life Insurance Co. v. Haslip (89-1279), 499 U.S. 1 (1991) PACIFIC MUTUAL LIFE INSURANCE CO. v. HASLIP, et al.** No. 89-1279 [March 4, 1991] *Justice Blackmun delivers Opinion* [March 4, 1991] Notes 1 "Now, if you find that fraud was perpetrated then in addition to compensatory damages you may in your discretion, when I use the word discretion, I say you don't have to even find fraud, you wouldn't have to, but you may, the law says you may award an amount of money known as punitive damages. "This amount of money is awarded to the plaintiff but it is not to compensate the plaintiff for any injury. It is to punish the defendant. Punitive means to punish or it is also called exemplary damages, which means to make an example. So, if you feel or not feel, but if you are reasonably satisfied from the evidence that the plaintiff, whatever plaintiff you are talking about, has had a fraud perpetrated upon them and as a direct result they were injured and in addition to compensatory damages you may in your discretion award punitive damages. "Now, the purpose of awarding punitive or exemplary damages is to allow money recovery to the plaintiffs, it does to the plaintiff, by way of punishment to the defendant and for the added purpose of protecting the public by deterring [sic] the defendant and others from doing such wrong in the future. Imposition of punitive damages is entirely discretionary with the jury, that means you don't have to award it unless this jury feels that you should do so. "Should you award punitive damages, in fixing the amount, you must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong." App. 105-106. 2 Although there is controversy about the matter, it is probable that the general verdict for respondent Haslip contained a punitive damages component of not less than $840,000. In Haslip's counsel's argument to the jury, compensatory damages of $200,000 (including out-of-pocket expenditures of less than $4,000) and punitive damages of $3,000,000 were requested. Tr. 810-814. For present purposes, we accept this description of the verdict… 6 Congress by statute in a number of instances has provided for punitive damages. See, e.g., 11 U.S.C. 303(i)(2)(B), 362(h),

43

| 2411 | and 363(n); 12 U.S.C. 3417(a)(3); 15 U.S.C. 78u(h)(7)(A)(iii), 298(c) 1116(d)(11), and |
| 2412 | 168m(2); 26 U.S.C. 7431(c)(1)(B)(ii); 33 U.S.C. 1514(c). |

2413
2414

2415 **713A. Brown v. CARD SERVICE, 3rd Cir. 2006, 464 F.3d 450 p5:** FDCPA Background
2416 Congress enacted the FDCPA in 1977 after noting the "abundant evidence of the use of
2417 abusive, deceptive, and unfair debt collection practices by many debt collectors." 15
2418 U.S.C. § 1692(a). At the time the Act was being considered, Congress was concerned that
2419 "[a]busive debt collection practices contribute to the number of personal bankruptcies, to
2420 marital instability, to the loss of jobs, and to invasions of individual privacy." Id. A
2421 significant purpose of the Act is not only to eliminate abusive practices by debt
2422 collectors, but "to insure that those debt collectors who refrain from using abusive debt
2423 collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

2424

2425 713B. The Following Counts are restated (from paragraphs 193-202) here as part of the
2426 bankruptcy obstruction.

2427

2428 **Count 37 Restated:** Attempt to Robbing the Plaintiff of $???,???.00 of labor or
2429 assets. Said robbery of money negatively affected Plaintiff's ability to do
2430 interstate commerce. The Hobbs Act (18 U.S.C. § 1951) prohibits robbery
2431 affecting foreign commerce.

2432

2433 **Count 38 Restated:** Robbing the Plaintiff of $900,000.00 and more unknown, by
2434 monetizing a fraudulent security. STATE OF TEXAS ET AL. negatively
2435 affected the plaintiff's ability in foreign commerce. Non-corporate entity United
2436 States person as foreign classification.

2437

2438 **Count 39 Restated:** Using Abuse of Process to Attempt to rob the Plaintiff of
2439 $900,000.00 and more unknown, through abuse of process in bankruptcy court.
2440 The Hobbs Act prohibits extortion affecting foreign commerce.

2441

2442 **Count 40 Restated:** Extorting $900,000.00 (face amount/amount known) from
2443 Plaintiff.

2444

2445 ### ABUSE OF PROCESS/
2446 ### TRAFFICKING VICTIM PROTECTION ACT

2447

2448 714. *Offences against nature are the heaviest. 3 Co. Inst. 20.*

2449 715. **Deuteronomy 14:21** Do not eat anything you find already dead. You may give it to an
2450 alien living in any of your towns, and he may eat it, or you may sell it to a foreigner. But
2451 you are a people holy to the LORD your God. Do not cook a young goat in its mother's
2452 milk. (The Bible)

2453

2454 716. Involuntary-servitude includes a condition of servitude induced by abuse of the legal
2455 process.

2456

2457 717. **Section 103 TVPA (5) (B) INVOLUNTARY SERVITUDE.**—The term ''involuntary
2458 servitude'' includes a condition of servitude induced by means of the abuse or threatened
2459 abuse of the legal process.

2460

2461 718. **F.T.C. v. Check Investors, Inc., 502 F.3d 159 (3rd Cir. 2007)** A "threshold requirement
2462 for application of the FDCPA is that the prohibited practices are used in an attempt to
2463 collect a 'debt.'" Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir.
2464 1987). Congress incorporated a broad definition of both "debt" and "debt collector" into
2465 the FDCPA in order to achieve its remedial purpose. 15 U.S.C. § § 1692a(5),
2466 1692a(6).

2467

2468 719. **Count 122:** STATE OF TEXAS ET AL. abused legal process to damage the Plaintiff.
2469 TVPA §103(5)(A)

2470

44

| | | |
|---|---|---|
| 2471 | 720. | **Count  123:** STATE OF TEXAS ET AL. threatened abuse-of-legal-process to damage |
| 2472 | | Plaintiff. §103(5)(A) |
| 2473 | | |
| 2474 | 721. | **Count 124:** STATE OF TEXAS ET AL. caused undue stress and duress in the Plaintiff. |
| 2475 | | TVPA §103(5)(A) |
| 2476 | | |
| 2477 | 722. | **Section 103 TVPA (5)(A)** INVOLUNTARY SERVITUDE.—The term "involuntary |
| 2478 | | servitude" includes a condition of servitude induced by means of any scheme, plan, or |
| 2479 | | pattern intended to cause a person to believe that, if the person did not enter into or |
| 2480 | | continue in such condition, that person or another person would suffer serious harm…; |
| 2481 | | |
| 2482 | 723. | STATE OF TEXAS ET AT; used a pattern to cause belief that Plaintiff would suffer |
| 2483 | | serious harm. |
| 2484 | | |
| 2485 | 724. | **Section 103 TVPA(8)(B)** The term "severe forms of trafficking in persons" means— |
| 2486 | | obtaining of a person for labor or services, through the use of force, or coercion for |
| 2487 | | the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery. |
| 2488 | | |
| 2489 | 725. | **Count 125:** STATE OF TEXAS ET AL. obtained Plaintiff's labor through fraud and |
| 2490 | | coercion for subjection to debt bondage. |
| 2491 | | |
| 2492 | 726. | **Count 126:** STATE OF TEXAS ET AL. obtained Plaintiff's labor through fraud & |
| 2493 | | coercion for involuntary servitude. |
| 2494 | | |
| 2495 | 727. | **Count 127:** STATE OF TEXAS ET AL. obtained Plaintiff's labor through fraud and |
| 2496 | | coercion for subjection to peonage. |
| 2497 | | |
| 2498 | 728. | TVPA§103(2)(C)The term "coercion" means the abuse or threatened abuse of the legal |
| 2499 | | process. |
| 2500 | | |
| 2501 | 729. | STATE OF TEXAS ET AL. abused Plaintiff with abuse of process. |
| 2502 | | |
| 2503 | 730. | Section 103 TVPA (2)(B) COERCION.—The term "coercion" means any scheme, plan, |
| 2504 | | or pattern intended to cause a person to believe that failure to perform an act would result |
| 2505 | | in serious harm to or physical restraint against any person; |
| 2506 | | |
| 2507 | 731. | STATE OF TEXAS ET AL. caused Plaintiff to believe that failure to perform an act |
| 2508 | | would result in serious harm. |
| 2509 | | |
| 2510 | 732. | TVPA103(2)(A)"coercion" means threats of serious harm to any person; |
| 2511 | | |
| 2512 | 733. | The term "severe forms of trafficking in persons" means the obtaining of a person for |
| 2513 | | labor or services, through the use of force, fraud, or coercion for the purpose of debt |
| 2514 | | bondage (involuntary servitude, peonage). TVPA§103 (8)(B) Severe Forms of |
| 2515 | | Trafficking In Persons. |
| 2516 | | |
| 2517 | 734. | STATE OF TEXAS ET AL. obtained Plaintiff's labor, through use of fraud & coercion |
| 2518 | | for peonage. |
| 2519 | | |
| 2520 | 735. | TVPA §103 (13) The term "victim of a severe form of trafficking" means a person |
| 2521 | | subject to an act or practice described in paragraph (8). . |
| 2522 | | |
| 2523 | 736. | The term "victim of trafficking" means a person subjected to an act or practice described |
| 2524 | | in paragraph (8) or (9). 103 TVPA (14) VICTIM OF TRAFFICKING. |
| 2525 | | |
| 2526 | 737. | **Jerman v. Carlisle 559 U. S. ____ (The Supreme Court 2010):** When it passed |
| 2527 | | the Act, Congress emphasized that independent debt collectors, the "prime source |
| 2528 | | of egregious debt collection practices," are unlike the creditors subject to TILA in |
| 2529 | | that debt collectors typically have little or no market incentive to treat consumers |
| 2530 | | properly. |
| 2531 | | |

45

| | | |
|---|---|---|
| 2532 | 738. | Ballantine's Law Dictionary: peonage. The status or condition of compulsory service |
| 2533 | | based upon the indebtedness of the peon to the master. 48 Am J1st Slav § 5. The criminal |
| 2534 | | offense of holding a person to service or labor in liquidation of a debt or obligation. 18 |
| 2535 | | USC § 444. A violation of the acts of Congress which were passed pursuant to the |
| 2536 | | enforcement clause of the Thirteenth Amendment to the United States Constitution. |
| 2537 | | United States v Reynolds, 235 US 133, 59 L Ed 162, 35 S Ct 86. |

| | | |
|---|---|---|
| 2538 | 739. | **18 USC § 1994. Peonage abolished.** The holding of any person to service or labor under |
| 2539 | | the system known as peonage is abolished and forever prohibited in any Territory or State |
| 2540 | | of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any |
| 2541 | | Territory or State, which have heretofore established, maintained, or enforced, or by |
| 2542 | | virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, |
| 2543 | | directly or indirectly, the voluntary or involuntary service or labor of any persons as |
| 2544 | | peons, in liquidation of any debt or obligation, or otherwise, are declared null and void. |

| | | |
|---|---|---|
| 2545 | 740. | Peonage has been abolished; a debt or obligation, related to peonage is null and void. |
| 2546 | | |

| | | |
|---|---|---|
| 2547 | 741. | **Count 128:** USC 18 1361Depredation on Government contract: USC 18 §1994. |
| 2548 | | |

| | | |
|---|---|---|
| 2549 | 742. | 18 USC § 1581. Peonage; obstructing enforcement (a) Whoever holds or returns any |
| 2550 | | person to a condition of peonage, or arrests any person with the intent of placing him in |
| 2551 | | or returning him to a condition of peonage, shall be fined… |
| 2552 | | |

| | | |
|---|---|---|
| 2553 | 743. | STATE OF TEXAS ET AL. with intent, held the Plaintiff in a condition of peonage, & |
| 2554 | | threatened arrests. |
| 2555 | | |

| | | |
|---|---|---|
| 2556 | 744. | (18,§1584(a)): STATE OF TEXAS ET AL. knowingly and willfully has held the |
| 2557 | | Plaintiff to involuntary servitude, and attempting to increase his stronghold. |
| 2558 | | |

| | | |
|---|---|---|
| 2559 | 745. | § 1589. Forced labor(a) Whoever knowingly provides or obtains the labor or services of a |
| 2560 | | person by any one of, or by any combination of, the following means— **(3) by means of** |
| 2561 | | **the abuse or threatened abuse of law or legal process;…** |
| 2562 | | |

| | | |
|---|---|---|
| 2563 | 746. | STATE OF TEXAS ET AL. knowingly attempted to obtain the labor of The Plaintiff the |
| 2564 | | following means— |
| 2565 | | |

| | | |
|---|---|---|
| 2566 | 747. | STATE OF TEXAS ET AL. used serious harm, threats of force, & threatened additional |
| 2567 | | serious harm to Plaintiff. |
| 2568 | | |

| | | |
|---|---|---|
| 2569 | 748. | The term "serious harm" means any harm… including psychological, financial, or |
| 2570 | | reputational harm, that is sufficiently serious, under all the surrounding circumstances, to |
| 2571 | | compel a reasonable person of the same background and in the same circumstances to |
| 2572 | | perform or to continue performing labor or services in order to avoid incurring that harm. |
| 2573 | | (18 USC § 1589 (2)). |
| 2574 | | |

| | | |
|---|---|---|
| 2575 | 749. | STATE OF TEXAS ET AL. used the abuse of legal process, and threat of additional |
| 2576 | | abuse of legal process. |
| 2577 | | |

| | | |
|---|---|---|
| 2578 | 750. | STATE OF TEXAS ET AL.'s fraud is not purged by circuity. Bacon's Max. in Reg. 1. |
| 2579 | | |

| | | |
|---|---|---|
| 2580 | 751. | Fraud and justice never agree together. Wing. 680 |
| 2581 | | |

| | | |
|---|---|---|
| 2582 | 752. | STATE OF TEXAS ET AL. *intended* to cause, infer, implicate belief that Plaintiff would |
| 2583 | | suffer serious harm. |
| 2584 | | |

| | | |
|---|---|---|
| 2585 | 753. | **§175. WHEN DURESS BY THREAT MAKES A CONTRACT VOIDABLE** |
| 2586 | | **(Rest.2$^{nd}$Cntr.)** (1) If a party's manifestation of assent is induced by an improper threat |
| 2587 | | by the other party that leaves the victim no reasonable alternative, the contract is voidable |
| 2588 | | by the victim. |
| 2589 | | |

| | | |
|---|---|---|
| 2590 | 754. | STATE OF TEXAS ET AL.'s contract is voidable for STATE OF TEXAS ET AL.'s |
| 2591 | | improper threat. |
| 2592 | | |

46

| | | |
|---|---|---|
| 2593 | 755. | (2) If… assent is induced by one who is not a party to the transaction, the contract is |
| 2594 | | voidable by the victim unless the other party to the transaction in good faith and without |
| 2595 | | reason to know of the duress either gives value. |
| 2596 | | |
| 2597 | 756. | STATE OF TEXAS ET AL. has not given value to the plaintiff. (Rest of Contr. § 175.2) |
| 2598 | 757. | STATE OF TEXAS ET AL. has not manifested the Plaintiff's assent. (Rest of Contr. § |
| 2599 | | 175.2) |
| 2600 | 758. | STATE OF TEXAS ET AL. is not operating in good faith. (Rest of Contr. § 175.2) |
| 2601 | 759. | STATE OF TEXAS ET AL.'s threat is improper within rule stated in §176(When Threat |
| 2602 | | is Improper).(§ 175.2) |
| 2603 | 760. | STATE OF TEXAS ET AL. inferring to be <u>an officer of the court, defrauded the court</u>. ( |
| 2604 | | §175.2) |
| 2605 | | |
| 2606 | 761. | This caused duress to the Plaintiff. **(Rest of Contr. § 175.2)** |
| 2607 | | |
| 2608 | 762. | The close relationships that STATE OF TEXAS ET AL. has with the Court, and the |
| 2609 | | complexity of these laws, |
| 2610 | | And the imposing threat of standing before a judge to defend oneself, is intimidating. |
| 2611 | | |
| 2612 | 763. | A lawyer cannot be hired to build *this* case, for the amount of Money STATE OF |
| 2613 | | TEXAS ET AL. is after. |
| 2614 | | |
| 2615 | 764. | Because STATE OF TEXAS ET AL. conspired to trade Plaintiff's credit through CDS, |
| 2616 | | resources become fewer. |
| 2617 | | |
| 2618 | 765. | STATE OF TEXAS ET AL., agent in some way connected to FDIC Transactions, |
| 2619 | | breaches security rules. |
| 2620 | | **(Restatement (second) of Contracts. § 175.2)** |
| 2621 | | |
| 2622 | 766. | This is very intimidating to Plaintiff. **(Rest of Contr. § 175.2)** |
| 2623 | | |
| 2624 | 767. | STATE OF TEXAS ET AL. broke so many statutes, that it took dozens of pages to list |
| 2625 | | them all. (§ 175.2). |
| 2626 | | |
| 2627 | 768. | STATE OF TEXAS ET AL. or his associates called on the phone. **(§ 175.2)** |
| 2628 | | |
| 2629 | 769. | This was very intimidating to the Plaintiff. **(Rest of Contr. § 175.2)** |
| 2630 | | |
| 2631 | 770. | STATE OF TEXAS ET AL.'s threat of police force through abuse of process, |
| 2632 | | intimidated the plaintiff. |
| 2633 | | **(Rest of Contr. § 175.2)** |
| 2634 | | |
| 2635 | 771. | Threat aroused such constant fear that precluded Plaintiff from exercising free will & |
| 2636 | | judgment. |
| 2637 | | |
| 2638 | 775. | Plaintiff had the knowledge of an "average" consumer before discovering STATE OF |
| 2639 | | TEXAS ET AL.'s trail. |
| 2640 | | |
| 2641 | 776. | STATE OF TEXAS ET AL.'s threat caused the making of contracts under false |
| 2642 | | pretenses. **(Rest.§ 175.2)** |
| 2643 | | |
| 2644 | 777. | Consent makes the law. A contract is a law between the parties, which can acquire force |
| 2645 | | only by consent. |
| 2646 | 778. | Further, in the words of this Honorable Court, if STATE OF TEXAS ET AL. did not |
| 2647 | | provide value, indemnification, nor did he provide proof of subrogation, then he has not |
| 2648 | | a place in this proceeding save as a new debtor. (pr) |
| 2649 | 779. | **First American Title Ins. Co v. Lawrence & Janet Coven 8-17-06 Case 04-24703 04-** |
| 2650 | | **2512.** Objection to discharge under 11 U.S.C. §§ 727(a)(2) & (a)(5). Claim that debtor |

47

| | | |
|---|---|---|
| 2651 | | Janet Coven intended to defraud bank. The marital relationship does not automatically |
| 2652 | | give rise to an agency relationship. Accordingly, the husband's fraud was not attributed |
| 2653 | | to the wife. Plaintiff bank was not a creditor via subrogation, contribution or |
| 2654 | | indemnification, and thus lacked standing to challenge the discharge. Objection to |
| 2655 | | discharge denied. 2006 Bankr. LEXIS 1956 (Bankr. D.N.J. Aug. 17, 2006). 2006 WL |
| 2656 | | 2385423 (Bankr. D.N.J. Aug. 17, 2006) |

2657   780.   From: http://www.njb.uscourts.gov/dw/chambers/opinions/RTL/2006.html

2658   781.   Title 28 USC 3305 (4) states a transfer has occurred when Debtor has acquired the rights
2659         to the asset transfer- and in STATE OF TEXAS ET AL.'s case against the Plaintiff, this
2660         never happened.
2661

2662   782.   The fact that the Plaintiff never acquired the assets of STATE OF TEXAS ET AL.'s
2663         transfer, backs up how The Honorable Raymond T. Lyons has adjudicated in the past
2664         such as First American Title Ins. Co v. Coven.
2665

2666   783.   The Honorable Court seems cognizant of the rules, and seems to be a very fair court
2667         judging on evidence brought before it, judging strictly by what is put on the record.
2668

2669   784.   Abuse-of-process by the Defendants hurts the entire community and integrity of
2670         judgments.
2671

2672   785.   Defendants knew that to put a case like this together is simply impossible for most
2673         people.
2674

2675   786.   The law does not allow impossibilities, I.E. wrongs have been done by the Defendant.
2676

2677   787.   It is with this understanding that Plaintiff Prays to make a clear case for the record, that
2678         together it would restore the public confidence, in a new golden age of justice.
2679

2680                                   **CIVIL RIGHTS**
2681

2682   788.   Which leads to the conclusion, that The Defendant used color of statute to make
2683         enticements into slavery, establish a contract under peonage, and provide more torts in
2684         the following ways.

2685   789.   STATE OF TEXAS ET AT; under color of law, statute, ordinance, and regulation,
2686         willfully subjected the Plaintiff to the deprivation of rights, privileges, and immunities
2687         secured or protected by the Codes, Constitution and laws of the United States. (18 USC §
2688         242 Deprivation of rights under color of law) Civil Rights 1871 "Ku Klux Klan Act"),

2689   790.   **F.T.C. v. Check Investors, Inc., 502 F.3d 159 (3rd Cir. 2007)**…Thus, Congress
2690         concluded that "[t]he issue is not one of uncollected debts, but rather whether or
2691         not consumers must lose their civil rights and be <u>terrorized</u> and abused by
2692         unethical debt collectors." H.R.Rep. No. 95-131, at 3 (1977).

2693   791.   STATE OF TEXAS ET AT; conspired to oppress the free exercise and enjoyment of
2694         many right and privilege secured to him by the Code of the United States. (18 USC §
2695         241. Civil Rights.) (Ku Klux Klan Act)

2696   792.   **Ku Klux Klan Civil Rights Act. § 1983.** Civil action for deprivation of rights

2697   793.   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
2698         any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
2699         citizen of the United States or other person within the jurisdiction thereof to the
2700         deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
2701         shall be liable to the party injured…
2702

2703   794.   Each count in this complaint is based on a right of the Plaintiff, which is very numerous.
2704

2705   795.   Each Act that has been impeded on counts as a violation of § 1983.(limited for
2706         simplicity.)
2707

796. **Count 129**: Knowingly depriving of rights with intent to defraud. (Civil Rights Act).

797. Plaintiff restates all allegations and demands judgment for the Plaintiff.

798. **KLEIN, KASTNER v. BOYD et al (3rd Cir.)** 97-1143; 1261 Brief of the Securities Exchange Commission Amicus Curiae.)"lawyers and other secondary actors who significantly participate in the creation of their client's misrepresentations, to such a degree that they may fairly be deemed authors or co-authors of those misrepresentations, should be held accountable as primary violators …

799. Plaintiff assembled this complaint as expediently as possible, because each element of the tort must be spelled out as thus, or else the Defendant, a true tortfeasor, would use the omission of the liability as plausible deniability in Defendant's abuse-of-process.

800. Each count, 1 to ???????? accounts for STATE OF TEXAS ET AL.'s own action in singular.

**COUNTS 130 to 259**

801. For each count, add one additional count for conspiracy, racketeering etc et al that apply.

**COUNTS 260 to 389**

802. For each count, add one additional count for attempted ongoing behavior.

**COUNTS 390 to 519**

803. For each original count, add one additional count for the deprivation of that count's government contract/civil rights.

814. See (Federal Reserve data on Credit Cards savings pertaining to damages.)
See (Department of Defense Evidence of *real* Injury)

# PRAYER

804. The Plaintiff prays that court grant The Plaintiff relief:

805. He who does not repel a wrong when he can, induces it. Jenk. Cent. 271.

806. "He who spares the guilty, punishes the innocent."

807. *"Galatians 6:7-8 -- 7 Be not deceived: God is not mocked. 8 For what things a man shall sow, those also shall he reap. For he that sows in his flesh of the flesh also shall reap corruption. But he that sows in the spirit of the spirit shall reap life everlasting."*

808. *"If any of you needs wisdom, you should ask God for it. James 1:5."*

809. *"Matthew 5:44 -- 44 But I say to you, Love your enemies: do good to them that hate you: and pray for them that persecute and calumniate you:"*

810. *A new judgment does not make a new law, but declares the old. 10 Co .42.*

# COMPUTING DAMAGES

811. **PACIFIC MUTUAL LIFE INSURANCE CO. *v.* HASLIP**, *et al.* No. 89-1279 *Justice Blackmun delivers Opinion* [March 4, 1991] …An arrangement was made for Union to send its billings for health premiums…. Premium payments … instead… (Ruffin and Lupia) misappropriated most of them…lapsed health care policies…had been cancelled. II Respondent Haslip was hospitalized… the hospital could not confirm health coverage, it required Haslip… to make a payment …placed her account with a collection agency. The agency obtained a judgment against Haslip and her credit was adversely affected… Following the trial court's charge on liability, the jury was instructed that if it determined there was liability for fraud, it could award punitive damages. …The jury returned general verdicts for respondents against Pacific Mutual and Ruffin in the following

49

| | |
|---|---|
| 2766 | amounts: Haslip:$1,040,000… V. "Punitive damages have long been a part of traditional |
| 2767 | state tort law." *Silkwood* v. *Kerr-McGee Corp.*, 464 U.S. 238, 255 (1984). Blackstone |
| 2768 | appears to have noted their use. 3 W. Blackstone, Commentaries *137-*138. See also |
| 2769 | *Wilkes* v. *Wood*, 98 Eng. Rep. 489 (C. P. 1763) (The Lord Chief Justice validating |
| 2770 | exemplary damages as compensation, punishment, and deterrence). Among the first |
| 2771 | reported American cases are *Genay* v. *Norris*, 1 S. C. L. (1 Bay) 6 (1784), and *Coryell* v. |
| 2772 | *Colbaugh*, 1 N. J. L. 77 (1791)….VI …By these instructions, see n. 1, *supra*, the trial |
| 2773 | court expressly described for the jury the purpose of punitive damages, namely, "not to |
| 2774 | compensate the plaintiff for any injury" but "<u>to punish the defendant</u>" and "<u>for the added</u> |
| 2775 | <u>purpose of protecting the public by [deterring] the defendant and others from doing such</u> |
| 2776 | <u>wrong in the future.</u>" App. 105-106. Any evidence of Pacific Mutual's wealth was |
| 2777 | excluded from the trial in accord with Alabama law. See *Southern Life & Health Ins. Co.* |
| 2778 | v. *Whitman*, 358 So.2d 1025, 1026-1027 (Ala. 1978) …[n9] <u>As long as the discretion is</u> |
| 2779 | <u>exercised within reasonable constraints, due process is satisfied.</u> See, *e.g.*, *Schall* v. |
| 2780 | *Martin*, 467 U.S. 253, 279 (1984); *Greenholtz* v. *Nebraska Penal Inmates*, 442 U.S. 1, 16 |
| 2781 | (1977). See also *McGautha* v. *California*, 402 U.S. 183, 207 (1971) …the Supreme Court |
| 2782 | of Alabama had elaborated and refined the Hammond criteria for determining whether a |
| 2783 | punitive award is reasonably related to the goals of deterrence and retribution. *Hornsby*, |
| 2784 | 539 So.2d, at 223-224; *Central Alabama*, 546 So.2d, at 376-377. <u>It was announced that</u> |
| 2785 | <u>the following could be taken into consideration in determining whether the award was</u> |
| 2786 | <u>excessive or inadequate: (a) whether there is a reasonable relationship between the</u> |
| 2787 | <u>punitive damages award and the harm likely to result from the defendant's conduct as</u> |
| 2788 | <u>well as the harm that actually has occurred; (b) the degree of reprehensibility of the</u> |
| 2789 | <u>defendant's conduct, the duration of that conduct, the defendant's awareness, any</u> |
| 2790 | <u>concealment, and the existence and frequency of similar past conduct; (c) the profitability</u> |
| 2791 | <u>to the defendant of the wrongful conduct and the desirability of removing that profit and</u> |
| 2792 | <u>of having the defendant also sustain a loss; (d) the "financial position" of the defendant;</u> |
| 2793 | <u>(e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for</u> |
| 2794 | <u>its conduct, these to be taken in mitigation; and (g) the existence of other civil awards</u> |
| 2795 | <u>against the defendant for the same conduct, these also to be taken in mitigation.</u> The |
| 2796 | application of these standards, we conclude, imposes a sufficiently definite and |
| 2797 | meaningful constraint on the discretion… The standards provide for a rational |
| 2798 | relationship in determining whether a particular award is greater than reasonably |
| 2799 | necessary to punish and deter. They surely are as specific as those adopted legislatively in |
| 2800 | Ohio Rev. Code Ann. 2307.80(B) (Supp. 1989) and in Mont. Code Ann. 27-1-221 |
| 2801 | (1989). Pacific Mutual thus had the benefit of the full panoply of Alabama's procedural |
| 2802 | protections. The jury was adequately instructed. The trial court conducted a post-verdict |
| 2803 | hearing that conformed with *Hammond*. The trial court specifically found the conduct in |
| 2804 | question "evidenced intentional <u>malicious, gross,</u> or oppressive fraud," App. to Pet. for |
| 2805 | Cert. A14, and found the amount of the award to be reasonable in light of the importance |
| 2806 | of discouraging insurers from similar conduct, *id.*, at A15. Pacific Mutual also received |
| 2807 | the benefit of appropriate review by the Supreme Court of Alabama…<u>We are aware that</u> |
| 2808 | <u>the punitive damages award in this case is more than 4 times the amount of compensatory</u> |
| 2809 | <u>damages, is more than 200 times the out-of-pocket expenses of respondent Haslip</u>, see n. |
| 2810 | 2, supra, and, of course, is much in excess of the fine that could be imposed for insurance |
| 2811 | fraud under Ala. Code 13A-511 and 13A-5-12(a) (1982), and 27-1-12, 27-12-17, and 27- |
| 2812 | 12-23 (1986). <u>Imprisonment, however, could also be required of an individual in the</u> |
| 2813 | <u>criminal context.</u> While the monetary comparisons are wide and, indeed, may be close to |
| 2814 | the line, the award here did not lack objective criteria. <u>We conclude, after careful</u> |
| 2815 | <u>consideration, that in this case it does not cross the line into the area of constitutional</u> |
| 2816 | <u>impropriety.</u> Accordingly, Pacific Mutual's due process challenge must be, ad is, rejected. |
| 2817 | <u>The judgment of the Supreme Court of Alabama is affirmed.  It is so ordered….</u> |
| 2818 | |
| 2819 | 812. Plaintiff demands justice, and demands the court rule to punish and deter the Defendants |
| 2820 | so that they are stopped from doing these wrongs again. |
| 2821 | 813. Plaintiff re alleges and restates all previous allegations and statements. |
| 2822 | 814. STATE OF TEXAS ET AL. converted $900,000.00 or more from Plaintiff. |
| 2823 | 815. **$900,000.00** is the total amount that STATE OF TEXAS ET AL. has attempted to take |
| 2824 | from the Plaintiff and STATE OF TEXAS ET AL. and co-conspirators may have made |

| | |
|---|---|
| 2825 | much, more, as amply evidenced, in this case. And the motive has been amply evidenced |
| 2826 | all throughout this document. (CDS). |
| 2827 | 816. Kansas and the United States send a clear signal that the behavior of the Defendants will |
| 2828 | not be tolerated, and that the courts *indeed*, exist to protect the public, in compliance with |
| 2829 | law, not abuse of power. |

**Statement Upon Which Relief Can Be Granted**

817. **WHEREFORE**, Plaintiff demands that the Honorable Court order, pursuant to §§ 844(a) of the FDCPA, 15 U.S.C. §§1692la (k), § 621 of the FCRA, 15 U.S.C §1681s(a), pursuant to *all* of the acts, rights, TVPA 18 USC § 1595 Civil Remedy, in conjunction with 18 USC § 1028A, Title 12 § 1833a Civil remedy FDIC, GLB, Civil RICO counts, and all remedies invoked by the restatement of these ??? counts, and pursuant to the Courts equitable powers to enter judgment against Defendant and in favor of Plaintiffs for each violation charged in this complaint, to include,

A. Award 4 times for Compensatory damages and 200 times for Punitive Damages CLEOPATRA HASLIP et al. v. Pacific Mutual Life Insurance, Inc. 499 U.S. 1, 113 Fed 2d 1, 111 S.CT. 1032 (no. 89-1279), the sum of which is $180,000,000.00; or

B. Award 75 times the damages as provided in Willows Inn Inc. v. Public Service Mutual Insurance Co., 2003 WL 21321370 (ED PA) Civ. A.00-5481, case number 03-2837 in the United States Supreme Court of Appeals for the third District, which is the sum of which is $67,500,000.00 ; or

C. Award ??? times based on each count to cover compensatory, punitive, and liquidated damages, the sum of which is $???????????

D. Such ancillary equitable relief as the Court deems to prevent unjust enrichment and to redress consumer injury resulting from Defendant's violations of the Title 12A NJ (NJ UCC), FDCPA, FCRA, TVPA and other state and federal violation stated herein this Complaint; or

E. Award plaintiff the costs of bringing this action, as well as such other and additional relief as the court may determine to be just and proper.

F. Permanently enjoin and restrain Defendant from violating the FDCPA, the FCRA and all the referenced Federal and State law in this Complaint.

G. The Defendant's void claim in Bankruptcy case 11-10135, Douglas County case 2010-MV-633 and State of Texas case D-1-GV-08-001748 will be permanently removed.

H. Defendant shall remove any derogatory information and inquiries from all four major credit-reporting agencies Trans Union, Equifax, Experian and Innovis and any other known credit reporting agencies STATE OF TEXAS ET AL. has used now or may use in the future.

    I. Defendant must also provide a letter and or Universal Data Form indicating that they have done this and send same to the Plaintiff.

    II. Invetsigate and pursue, all MISPRISON OF FELONY issues arising by the conspiatotial acts being committed and creaing on going injury.

    III. These formal charges have not been brought, since the severity is so extreme and the actual conspirators so large, in concept, and no Harrasment, coercion, anxiety is intended to any who have been unwitting pawns in this global conspiracy. But we fully intend to demonstrate these facts to a trial jury, competent to determine the facts and the Law.

**CONCLUSION**

818. Plaintiff restates all previous allegations and demands Judgment for the Plaintiff.

51

| | | |
|---|---|---|
| 2885 | 819. | Solemnly Affirmed, and Respectfully Submitted to the Honorable Court on this day, |
| 2886 | | April 26, 2011. |
| 2887 | | |
| 2888 | | |
| 2889 | | /s/ REX VEECH YOUNGQUIST (RESCINDED RESIGNATION OF |
| 2890 | | COMPELLED TRUSTEE LAST 4 DIGITS OF THE SS TRUST 6758) by Rex |
| 2891 | | Veech Youngquist |
| 2892 | | |
| 2893 | | /s/ GAIL YOUNGQUIST (RESCINDED RESIGNATION OF |
| 2894 | | COMPELLED TRUSTEE LAST 4 DIGITS OF THE SS TRUST 0530) by Gail |
| 2895 | | Youngquist |
| 2896 | | |
| 2897 | | Filed by Rex Veech Youngquist, Executor, by his living will to all Administrator's and |
| 2898 | | ordinaries. |